WELCH'S HEIRS
*vs.*
CHANDLER, &c.

---

EJECTMENT.

## Welch's heirs *vs.* Chandler, &c.

Case 22.

### ERROR TO LINCOLN CIRCUIT.

December 31.

Judge MARSHALL delivered the opinion of the court,

1. A deed was made by husband and wife in 1819 for land, the inheritance of the wife, acknowledged and recorded. The certificate, as at first recorded, purported to be only a relinquishment of *dower*, and so it appeared upon the certificate on the back of the deed; as it now appears, the word *dower* is crossed with the pen and the word *inheritance* inserted above, both in the record and upon the deed. From all the facts, the court concludes that the alteration was made whilst the clerk had the right to correct the record, and that the deed was valid to pass the right of inheritance of the wife.

2. A female of full age owning land, sold it by verbal contract, received the price, put the purchaser in possession, but failed to convey until she become a *feme covert* and had issue born alive, when her husband united with her in a conveyance to the purchaser—held, that the husband was not tenant by the curtesy, and that if any right of action accrued to the heirs of the *feme* to sue for the land, it accrued upon her death, and not upon the death of the husband. (*See 2 Blackston,* 128, side page; *Ib.* 208.)

Case stated.

This action of ejectment was brought in 1851, by the collateral heir of Mrs. Polly Welch, who died without issue, to recover two hundred acres of land in the possession of the defendants, Chandler, &c. Upon the trial the law and the facts were submitted to the judge in the place of a jury, and a judgment having been rendered for the defendants, the plaintiffs prosecute a writ of error for its reversal.

On the trial, the plaintiff's evidence conduced to prove that the land in contest had belonged to S. Da-

vis, the father of Polly Welch; that in 1797 and 1798, and after his death, a division had been made of his estate among his heirs, in which 300 acres of land, including the 200 acres now in contest, had been allotted to his daughter Polly, then unmarried, under whom the possession was taken; that she, before her marriage, sold the land to James Logan, verbally; that he took possession, and sold to James Vaughn, who afterward sold to Chandler; that Polly Welch died in 1840, and her husband John Welch died in 1849; and that the defendants were in possession at the commencement of this action, and before and since, claiming the land as their own. The plaintiffs also read as evidence from the record book of the clerk of the county court of Lincoln county, a deed from John Welch and Polly his wife to James Vaughn, together with the certificate of acknowledgment written under it in the same book. The deed purports to convey the 200 acres in fee simple, with general warranty, by both of the grantors jointly; but the certificate, though in other respects sufficient to pass the inheritance of Mrs. Welch, purported, as originally written, to state that she relinquished her dower; and the word 'dower' had been partially obliterated by the marks of a pen drawn across it, and the word 'inheritance' was interlined above in a different handwriting. The certificate bore date June 12, 1819, when the deed was executed. There was a note on the margin of the deed book, in a different handwriting from either the certificate or the interlineation, with the date of ———, 1829, importing that the deed was examined and delivered. And the evidence of the plaintiff conduced to prove that the interlineation of the word 'inheritance' was made since the year 1840, two witnesses stating that they had examined the record after that time with a view to a suit by Welch's heirs, and the word 'inheritance' was not in the certificate.

The defendants read in evidence the original deed from Welch and wife to Vaughn, and the original

certificate thereon, in which the word 'dower' had been first written, and marked across with a pen, and the word 'inheritance' had been interlined above in the same handwriting as in the certificate on the record book. They also read an additional certificate of two justices of the peace, made thereon in 1837, stating the separate acknowledgment of Mrs. Welch at that time and the relinquishment of her inheritance on privy examination, and read the record of said certificate; and proved by one of the justices who made it, that at and before its date the word *'inheritance'* had been interlined and the word *'dower'* marked across in the original certificate, and that it was to remove any objection on that account that the second acknowledgment was taken. At the taking of which he stated that Mrs. Welch said she had sold the land and received the pay for it before her marriage, and wanted it all made right. The defendants also proved by the clerk of the Lincoln county court, that he had been the clerk during the whole period covered by these certificates; that he took the acknowledgment of Welch and wife, and made the usual memorandum on the deed, (which states the acknowledgment and relinquishment, without designating the interest relinquished by the *feme*;) that he was well acquainted with the nature of Mrs. Welch's title and interest, and explained to her the effect of the deed, and knows she relinquished her inheritance; that the certificate on the deed was drawn out by a deputy, who also recorded the deed and certificate; that the word 'inheritance' interlined in the certificate on the deed and in the record, was his handwriting; that he has no recollection when it was done, but knows it was done before the deed was first taken out of the office, (in 1829;) that he never had done such a thing after a deed was taken from the office, and would not do it; that it had been his habit to examine and correct the record of deeds and certificates before they left the office, and thought he had power to do so up to that time, but not afterwards.

The defendants also read from the record a deed from Welch and wife to Finley for 100 acres of land, (the residue of the 300 which had been allotted to Polly Davis, as above stated;) also the certificate of acknowledgment written under it, which states a relinquishment of 'dower,' without the word 'inheritance.' The record of this deed follows immediately after that of the deed to Vaughn. And while the defen‹ dants seem to rely on it as authorizing, in connection with their other proof, the inference that the attention or the memory of the plaintiffs' witnesses, may have been fixed on this latter certificate, it seems also to be relied on by the plaintiffs as impairing the weight of the clerk's testimony. The plaintiffs, as has been seen, first read from the record the deed from Welch and wife with the certificate annexed, in order, no doubt, to prove that the possession was held under the title of Mrs. Welch, and to estop the defendants from denying it. They did not, however, rest simply upon the face of the certificate to show that the deed had not passed the title of Mrs. Welch, but introduced parol evidence to prove that the alteration, apparent on its face, had been made many years after the date of the certificate, after the deed had gone out of the office, and when it was certainly unau‹ thorized and could not change the effect of the certificate as originally written. Upon their evidence the rational deduction would be, that the alteration had been surreptitiously made, for the purpose of con‹ verting, improperly, a relinquishment of dower into a relinquishment of the inheritance, and thus to pass the fee simple title of Mrs. Welch by a deed which was entitled to no such effect.

But the defendants, relying on the same deed as an effectual conveyance of whatever title each and either of the grantors had, would have been entitled, even if they had introduced it in the first instance, to remove, as far as they could by parol evidence, any suspicion arising from the alteration in the certificate, and certainly had the same right under the

circumstances which actually occurred. It is not the mere fact that the word 'dower' appears plainly to have been first written and marked over, and that the word 'inheritance' is interlined above, that can invalidate the certificate as proper evidence of a relinquishment of the inheritance. If the interlineation were in the same handwriting, and of similar appearance with the body of the certificate, the presumption would be, that the alteration was a correction made at the proper time and within the power and duty of the officer. And in our opinion the same presumption would arise from the fact, that while the acknowledgment was taken by the principal clerk, the certificate was drawn out from his brief minute by a deputy, who also recorded the deed and certificate, and that the word 'dower' appearing to have been written in the original and recorded certificates, was in both partially obliterated, and the word 'inheritance' interlined by the principal clerk, who had the same right to correct the certificate, when made by his deputy, as if it had been made by himself. The presumption is, that the officer did his duty and nothing more than his duty, unless the contrary is made to appear. And it was doubtless to rebut this presumption, expected to arise upon the evidence of the defendants, that the plaintiffs introduced evidence tending to prove that the recorded certificate stood unaltered until after the year 1840, when the clerk certainly had no right even to correct it. The evidence of the plaintiff, however, does not relate to the original certificate on the deed itself; which is proved by the uncontradicted testimony of two witnesses to have been altered by interlineation of the word 'inheritance' before the re-acknowledgment of the deed by Mrs. Welch, which was in 1837, and, as one of these witnesses (the clerk) states, before the deed was taken out of the office in 1829.

Assuming then, as may be rationally done, that the original certificate was altered by the principal clerk before the deed was first delivered out of the office,

the inference is very strong, if not inevitable, that he at the same time looked to the recorded certificate and made the same alteration in it. And although he has no recollection of the particular fact, he states positively, from his habit and his belief as to his power and duty, that he made both alterations before, and not after, the deed first left the office ; and this statement is further corroborated by the presumption in favor of official probity and good conduct. The clerk who had held his office for thirty or forty years might forget the date, and even the fact of a particular alteration made by himself in his office, and in the course of what he deemed to be his official duty, but he could not well forget an act of this sort if done out of his office and in violation of his own sense of his official duty and power. If he swears falsely he must have been perjured. And we cannot say that the judge, who sat in the court in which this witness had so long been clerk, had not a right to believe his whole statement notwithstanding the contradiction of it in part by the two attorneys who state that the word 'inheritance' was not in the recorded certificate when they examined it in 1841–2 or 1843. They examined the certificate with a view to a suit for the land by the heirs of Mrs. Welch, and probably with a view to find out defects. Their attention may have been more strongly riveted upon the partially obliterated word 'dower,' than upon the interlined word 'inheritance,' if both were there. If they noticed both, they may have considered, and perhaps still consider, that the word 'dower' having been originally written, and remaining visible and legible, was still the potential word determining the legal effect of the certificate. And considering the interlined word as entitled to no influence, and the certificate as nothing more than a certificate of the relinquishment of dower, the existence of the interlined word may have passed from their memory in the interval of eight or ten years which elapsed before they deposed in the trial of this case. Or the certificate upon the deed from

the same parties, and immediately following upon the record the one now in question, may have been confounded with it in their recollection. We advert to these hypotheses merely to show that this testimony might be subject to impairment without impeaching the truthfulness of the witnesses by whom it was detailed. And although it may be said on the other hand, that the clerk must be presumed to have been under a strong bias to support his own acts; yet, if with the superior advantages for the attainment of truth, which his position and knowledge of the witnesses necessarily give to the judge who tried the cause, he has placed more reliance upon the statement of the clerk, on this particular subject, corroborated as it seems to have been, than upon the testimony of the two witnesses in question, we should not feel authorized to reject his conclusion, on the ground that it was contrary to the evidence or unsupported by it.

But it is contended, that even if the alteration was made in both certificates while the deed was first in the office, the clerk had no right to make it in 1829, when, as the memorandum upon the record book imports, it was examined and delivered. But the fact that this memorandum, which does not negative the fact that the deed may have been previously examined, was made by a deputy, and that the alterations were made by the principal clerk, repels the inference that they were made at that time, and leaves the question as to the time when they were made to rest simply on the fact that they were made while the deed was first in the office, and upon the presumptions which may arise from the duty of the clerk and from the character of the individual officer. It cannot be assumed, then, that the alteration was made on the day on which the deed was first taken from the office; and there being no evidence to fix the precise period at which it was previously done, the case is, that the certificate on the deed and on the record having been first written by a deputy, so as to import a relinquish-

ment of dower, was afterwards altered by the princi-pal clerk, who had taken the acknowledgment and knew the facts, so as to import a relinquishment of the inheritance. And the certificate exhibits the word 'dower' partially obliterated with the pen, and the word 'inheritance' interlined above it. Was the act of the deputy, in drawing out and recording the cer-tificate, conclusive as to the facts certified so as to preclude any subsequent alteration by which it might be made to speak the truth? We certainly should not concede to the clerk the power of making such a correction after the lapse of years, though the deed might still remain in his office. Nor, on the other hand, can the power of correction be absolutely de-nied. It would be dangerous in the extreme to allow that the clerk might, at any distant interval, change the evidences of title remaining in his office upon his mere recollection of the facts of the case. On the other hand, it would be extremely unjust to parties having a right to confide in the diligence and skill of the clerk, if the mistake of a deputy in recording the acts of the principal, could not, upon discovery within reasonable time, be corrected by the latter. It would be difficult to fix precisely the period within which this may be safely allowed, nor is it necessary in the present case, because it does not appear when it was, in fact, done. The alteration in these certificates might, for all that appears, have been made on the day after the deed was lodged for record, or within such short period that the clerk perceiving, upon ex-amining of his record of deeds, as it was his duty to do at brief intervals, that the certificate of his own acts was erroneous in a particular highly injurious to the parties concerned, might correct it without any danger of being himself mistaken as to the facts which should be stated. The recording of a deed can scarcely be said to be completed until the record is examined and compared with the original, and if this is done promptly and in reasonable time, this power of correction may be then exercised. And the

question is whether, upon the facts indisputably proved, that the acknowledgment was taken by the clerk, that the certificate and record were made by the deputy, and that the word 'dower' was erased and the word 'inheritance' interlined by the clerk, the presumption should not be that the correction was properly made and in due time; and whether the certificate should not have effect, according to its present import as a proper certificate of acknowledgment by the *feme* and of the relinquishment of her inheritance. We think that, upon the facts assumed, this presumption should be indulged, and the certificate should be thus taken. And as the circuit judge, in weighing the evidence, had a right to assume that the alteration was made while the deed was first in the office and before the day when it was taken out, we are of opinion that his judgment, so far as it rests upon the sufficiency of this deed to pass the title of Mrs. Welch in fee, is sustained by the evidence and the law.

We have rested the conclusion, that the certificate as it now stands with the word 'inheritance' interlined is the true and authentic certificate determining the operation of the deed, on the fact that the alteration was made in the certificate of the deputy by the clerk who took the acknowledgment, and who had a right to correct the certificate, and upon the presumption, not repelled by the evidence, that it was done in due time, and according to the truth of the fact as it actually occurred. That the certificate, as altered, represents the fact as it was intended and understood to be, and gives to the deed the operation which all the parties intended and expected it to have, is placed beyond question by the facts, that Mrs. Welch had no dower in the land, but had inherited the fee simple from her father, which was notorious; that the land was not sold by her husband, but had been sold by herself (verbally) before her marriage, and when of full age; that her vendee had paid her for it, taken and held possession, claiming it as his own before her marriage, and had sold it to Vaughn, who also took

1. A deed was made by husband and wife in 1819 for land, the inheritance of the wife, acknowledged and recorded. The certificate, as at first recorded, purported to be only a relinquishment of *dower*, and so it appeared upon the certificate on the back of the deed; as it now appears, the word *dower* is crossed with the pen and the word *inheritance* inserted above, both in the record and upon the deed. From all the facts, the court concludes that the alteration was made

and held the possession claiming the land as his own, and while thus in possession received the deed from Welch and wife purporting to convey it in fee simple. Mrs. Welch obviously intended to convey the fee. And it cannot be doubted that this was intended and supposed to be the effect of the deed and of the official act of the clerk in taking the acknowledgment which was to make it operative for its intended purpose. And although the utmost certainty as to the intention of the parties, or as to the actual form of the relinquishment, could not give efficacy to the deed beyond or contrary to the import of the certificate, it tends to prove that in this case, the certificate as altered states the truth, and thus corroborates the presumption that the alteration was, in fact, a correction properly made, and aids the conclusion that the certificate as corrected should determine the operation of the deed. If the deed passed the fee simple title of Mrs. Welch, the plaintiffs had of course no right to recover.

But the defendants rely upon the sale of the land by Polly Davis, while a *feme sole* and competent to sell, and the continued possession under that sale as furnishing a bar to the action under the act of 1840, (3 *Stat. Law*, 413,) limiting to three years certain actions for the recovery of lands by females and their heirs, on the ground that although there was issue born of the marriage of John Welch and Polly Davis, and although her title in fee may not have passed by the deed, there was no such seizin of this land during the coverture as made the surviving husband tenant by the curtesy; that consequently her title, with such right of entry as belonged to it, descended immediately to her heirs unobstructed by any curtesy in the husband, and that their right of action in that state of case was limited to three years after her death, which occurred in 1840, (*Phillips* v. *Pope's heirs*, 10 B. *Monroe*, 163,) and not to three years after the death of her husband in 1849. The action was not commenced until 1851, and unless John Welch was tenant

WELCH'S HEIRS
*vs.*
CHANDLER, &c.

whilst the clerk had the right to correct the record, and that the deed was valid to pass the right of inheritance of the wife.

2. A female of full age owning land, sold it by verbal contract, received the price, put the purchaser in possession, but failed to convey until she became a *feme covert*, and had issue born alive, when her husband united with her in a conveyance to the purchaser—held, that the husband was not tenant by the curtesy, and that if any right of action accrued to the heirs of the *feme* to sue for the land, it accrued upon her death, and not upon the death of the husband. (*See*

WELCH's HEIRS
vs.
CHANDLER, &c.

2   Blackstone,
128, side page;
Ib. 208.)

by the curtesy, it was barred six years before his death.

The general requisities for constituting an estate by the curtesy are well understood. According to the common law, actual seizin of the wife's land during coverture was indispensable. In some states of this Union, legal seizin has been deemed sufficient. But this court has adhered to the common rule requiring actual seizin. What this actual seizin is, has not, however, been precisely defined by the court. But on looking into the second book of *Blackstone's Commentaries,* where he treats of this requisite to an estate by the curtesy, (side page 128,) it seems entirely clear that the actual seizin must be such as would make an ancestor the proper source or stock from which to derive the inheritance under the maxim *seizina facit stipitem.* And on referring to his commentary on the first canon of descent which embodies this maxim, (page 208,) we find it laid down that the ancestor, from whom lands may be derived by descent, must have had actual seizin, "either by his own entry, or by the possession of his own or his ancestor's lessee for years, or by receiving rent from a lessee of the freehold."

In the case of *Vanarsdale* v. *Fauntleroy's heirs,* 7 *B. Monroe,* 401, it was decided by this court, that where husband and wife had executed a deed of the wife's unimproved land, purporting to pass the fee, but which was ineffectual for that purpose in consequence of a defect in the certificate of acknowledgment, the entry of the grantee under that deed was a sufficient seizin to make the husband tenant by the curtesy, and to uphold until his death the possession of his grantee. But here the possession was not taken under the deed of Welch and wife, but had been acquired and held for ten or twelve years under the verbal sale of the wife while *sole,* and under claim of ownership by virtue of that sale. And although this possession might have been defeated by the vendor or her husband, and may therefore be regarded as held at their will, it was held by the persons in pos-

session under claim of right to the fee simple and not as lessees, nor under acknowledgment of any obligation to surrender it at the will of either Mrs. Welch or her husband. And having commenced before the marriage of Mrs. Welch, it might, notwithstanding her subsequent coverture, have matured into a right of possession by the lapse of twenty years. Under these circumstances the deed operated only as a release or confirmation, and its acceptance by the party in possession, though it might have stopped the running of the statute of limitations, neither created an estoppel upon the grantee, nor put the grantors into possession, actual or virtual, nor changed the character of the previous possession. And if the deed did not pass Mr. Welch's title, the case as to the right to curtesy is just the same as if no deed has been made and Mrs. Welch had died before the possession had continued twenty years, and the husband had, within that period, claimed the possession as tenant by the curtesy, invested with her title during his own life. We think the title of the wife and the right to avoid or disregard her verbal sale, made before marriage, would not in such case have remained in her surviving husband, but would have descended to her heirs ; because, although the possession might have.been defeated during the coverture, it was not held either by or for her or her husband, nor under any recognition of their right to it ; and because, although the purchasers may have known and even acknowledged that the legal title was in her, or might have been estopped to deny it, and might have expected and claimed a conveyance of it, yet as they were not lessees, but held and claimed the land under a purchase from her, which was never repudiated during the coverture, their possession, as we suppose, never became the possession of herself or her husband, and therefore did not, as we are inclined to think, give actual seizin, nor make her surviving husband tenant by the curtesy, and cer-

tainly the acceptance of the deed did not give actual seizin either to the husband or the wife.

We are inclined to the opinion, therefore, that if the deed were ineffectual to pass Mrs. Welch's title, her heirs had the right of entry immediately upon her death, and were barred by the lapse of more than three years before this action was commenced. But be this as it may, they could not recover, because the deed passed the title of Mrs. Welch.

Wherefore the judgment is affirmed.

*B. & J. Monroe* and *Burton,* for plaintiffs; *Fox, Bell,* and *Harlan,* for defendants.

