CASE 42—PETITION EQUITY—OCTOBER 23.

# Stevenson, &c. v. Martin, &c.

APPEAL FROM KENTON CIRCUIT COURT.

1. ADVANCEMENTS are to be estimated at their value when made.—

   BUT AN ADVANCEMENT TO BE ENJOYED AT A FUTURE PERIOD, and secured by deed, must be deemed to have been made or given at the time it was made complete by the actual possession and enjoyment of the property advanced. (Hook v. Hook, 13 B. Mon. 528.)

2. CONVEYANCE TO HUSBAND OF GRANTOR'S DAUGHTER.

   *The intention of the donor to advance to his daughter will be presumed* from the fact that he conveys to her husband upon the sole consideration of the existence of the marriage relation between them. (Barber v. Taylor's heirs, 9 Dana, 84.) But if she be dead at the time of the conveyance to her husband no such presumption will be entertained as against her children.

3. GIFTS TO GRANDCHILDREN DURING THE LIFE OF THEIR PARENTS ARE NOT ADVANCEMENTS TO SUCH PARENTS.

   The statute does not provide that such gifts shall be advancements; its language rebuts any such implication. They will not be converted into advancements to such grandchildren by the subsequent death of the parent during the lifetime of the grandparent. Such gifts are mere gratuities at the time they are made, and are chargeable neither to the grandchildren nor their parents, and subsequent events do not and can not change their legal character.

J. O'HARA, JR., . . .⎫
JOHN G. CARLISLE, . . ⎬ . . . . . . . For Appellants,
T. N. & D. W. LINDSEY, ⎭

CITED

Revised Statutes, 1 Stanton, p. 426, sec. 17.
Lofft, 490, Beckford v. Beckford.
1 Met. 583, Ford v. Thompson.
3 Met. 272, Cleaver v. Kirk.
2 Cox, 92, Dyer v. Dyer.
1 Swanst. 17, Franklin v. Franklin.
2 Swanst. 597, Grey v. Grey.

2 Beav. 454, Sidmouth v. Sidmouth.

2 Ch. Ca. 26, Ebraud v. Daucer.

1 Coll. 261, Current v. Jago.

1 Ch. Ca. 27, Scroope v. Scroope.

2 Vern. 120, Back v. Andrew.

1 Pr. Wms. 111, Lamphugh v. Lamphugh.

1 My. & K. 511, Crab v. Crab.

5 Barb. (S. Ct.) 425, Proseus v. McIntyre.

6 Blackford, 194, Stanley v. Brannon.

7 Barr, 180, Dennison v. Gochring.

1 Yerger, 97, Thompson v. Thompson.

9 Dana, 86, Barber v. Taylor.

8 Bush, 655, Clarkson v. Clarkson.

1 Vesey, 200, Wythe v. Blackman.

4 Vesey, jr., 437, Royle v. Hamilton.

3 Vesey, jr., 383, Horseford v. Watson.

3 Vesey, jr., 257, Davenport v. Haubury.

2 Blackstone's Com. 190.

5 Dana, 466, Taylor v. Knox.

5 Littell, 153, Nelson v. Clay.

17 B. Mon. 705, Clarke v. Clarke.

10 Vesey, 50, Finch v. Finch.

10 Paige, 618, Patridge v. Havens.

18 Ohio, 418, Tremper v. Barton.

13 B. Mon. 526, Hook v. Hook.

13 Vermont, Newell v. Newell.

18 Ala. 176, Wilson v. Wilson.

22 Ohio St. 436, Dittoe v. Clancy.

10 Vesey, jr., 195, Ratcliffe v. Buckley.

14 N. H. 287, Comings v. Wellman.

BENTON & BENTON, . . ⎫

R. D. HANDY, . . . . . ⎬ . . . . . . . . For Appellees,

JOHN F. & C. H. FISK, ⎭

CITED

Revised Statutes, 1 Stan. pp. 179, 426, sec. 17.

Revised Statutes, chap. 37, art. 1. sec. 1.

Jones's Law Rep. (N. C.) 137, Shiver v. Brock.

9 Dana, 84–86, Barber v. Taylor.

3 Met. 272–3, Cleaver v. Kirk.

1 Met. 583, Ford v. Thompson.

1 Met. 286–7, Gordon v. Gordon.

1 Dana, 199, Stone v. Halley.

5 Dana, 170–2, Powell v. Powell.

Stevenson, &c. v. Martin, &c.

4 Kent, 417.                    37 Ala. 449.
1 Bou. Law Dic. "Advancement."
1 Grant's Cases (Penn.) 369, Christy's Appeal.
4 Gilm, 303, Taylor v. Taylor.
8 Md. 121, Hodgson v. Macy.
1 Swan. (Tenn.) 487, Cawthorne v. Coppedge.
2 Williams on Ex. 1350.
5 Bush, 275, Thomas v. Capps.
7 Mon. 166, Chapline v. Moore, &c.
1 Williams on Executors, p. 310.
7 Ohio St. R. 432–37.
13 B. Mon. 526, Hook v. Hook.
17 B. Mon. 705, Clarke v. Clarke.
23 Ind. 440, Dillman v. Cox.
20 Maryland, 153, Cecil v. Cecil.
20 Conn. 322, Johnson v. Belden.
11 Ind. 80, Shaw v. Kent.
40 Penn. 57, Miller's Appeal.
29 Geo. 574, Brown v. Burke.
18 Ohio, 418, Femper v. Barton.
10 Bush, 600, Shawhan v. Shawhan.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

O. R. Powell died in Kenton County, in 1862, at the advanced age of ninety-four years. He left a large estate, consisting principally of realty, situate in and adjacent to the city of Covington. During his life he had advanced, more or less, to all his children and heirs-at-law. He died intestate, and this suit was instituted to settle and distribute his estate.

By a judgment rendered upon exceptions to the master's report the questions in controversy were adjudicated. Some of the parties in interest, being dissatisfied, have appealed from that judgment. The principal grounds of complaint in this court are that the law regulating and governing advancements has not been correctly administered.

1. Abram Powell's heirs complain that they have been charged with too great a sum on account of a tract of about thirty acres of land, conveyed to their father by the intestate in 1849. It seems that in 1823 the intestate purchased, for

the sum of $1,100, a tract of eighty-five acres of land lying near the city of Covington. He had the conveyance made to his two infant sons, Abram and O. R. Powell, jr., but he caused the deed to be so framed as to secure to himself a life-estate in the property. In 1842 he entered into an agreement with Abram by which he covenanted to relinquish his life-estate in about thirty acres of the land, in consideration that Abram would convey to him his interest in remainder in his one half of the tract. This agreement was evidenced by a bond executed by the intestate, by which he undertook to convey to Abram for life, with remainder in fee to his children.

Out of this last stipulation in the bond a controversy arose between the father and son, the latter insisting that the provision securing the estate to his children as remainder-men had been inserted by and through fraud or mistake.

This controversy was settled in 1849, when the intestate conveyed the thirty acres in fee to Abram.

The master charged Abram's heirs with the value of the land in 1849, estimating it at the sum of $24,000. They insist that they should be charged with the amount paid for their father's benefit in 1823; or, if mistaken in this, that they should be charged with its value in 1842, when their father first received the possession and began to enjoy the property.

The law as settled by the case of Hook v. Hook (13 Ben. Monroe, 528) is that advancements shall be estimated at their value when made, and that an advancement secured by deed, but to be enjoyed at a future period, shall be deemed to have been made or given at the time it is made complete by the actual possession and enjoyment of the property advanced; and in that case it was held that as the father reserved a life-estate in the lands conveyed to certain of his children they should be charged with the value thereof at the time of his death instead of the value at the date of the conveyance, encumbered as they then were with the life-estate reserved.

We are entirely satisfied with the reasoning of the court in the case cited, and will adhere to it in the settlement of the questions under consideration. It results that the chancellor did not err in declining to fix 1823 as the time at which the value of this advancement to Abram should be estimated. But it was error to estimate its value as of the date of the deed executed in 1849. The contract between the father and son in 1842 secured to Abram the immediate possession and enjoyment of the thirty acres, and he continued to possess and enjoy that land from that time forward. It was then that the advancement was made complete and perfect, and it is at that time that its value should be estimated. The exception to this item of the master's report should have been sustained.

2. It is complained by some of the appellants that certain of the daughters of the intestate have been charged with the value of lands conveyed to their husbands. They insist that under the provisions of the statute a descendant, or those claiming through a descendant, can not be charged as an advancement with any property other than that given or devised to the descendant in person, and that the husband of a female descendant can not be regarded and treated as one and the same with the wife for the purpose of determining the value of advancements made to her.

The first section of the act of 1830 (Stat. Laws, vol. 1, page 784) is as to this matter substantially the same with sec. 17, chap. 30 of the Revised Statutes, which was in force at the time of the death of the intestate. In construing the act of 1830, in the case of Barber v. Taylor's heirs (9 Dana, 84) this court, by Chief-Justice Robertson, said : "A gift of money or other personal property to the husband of the donor's daughter would, if not otherwise intended, be an advancement to such daughter, though the husband, by wasting or losing it, might prevent his wife from deriving any benefit from it. So land given in *frank-marriage* to the husband and wife and to the

survivor of them and their issue in tail—the wife being the daughter of the giver—would be an advancement to her to the full extent of the value of the entire estate, although the husband might survive her, and might also dock the entail and thereby monopolize the whole estate; yet, in distributing her intestate father's estate, her children would be charged with the value of the estate thus enjoyed and converted by their father, because their grandfather so intended and provided, and because the object of the statute was to distribute his estate as he himself would have done or may be presumed to have intended. Nor could we doubt that a conveyance of the land to the husband of the conveyor's daughter in consideration only of his being her husband should be considered an advancement to her, just as much as if the conveyance had been to herself alone, or to her and her husband as tenants by the entirety." And in that case the court held that lands conveyed to the husband after the wife's death, pursuant to an oral promise made to him during her life (the possession having been delivered at the time the promise was made), should be treated as an advancement to the wife, and that her children should be charged with their value.

The doctrine of the decision is that the intention of the donor to advance his daughter will be presumed from the fact that he conveys to her husband upon the sole consideration of the existence of the marriage relation between them. In this case this presumption is entitled to greater consideration in view of the fact that the Revised Statutes provided that a parent or grandparent could not by mere declaration of his intention exempt one of his descendants from liability for money or property given or devised to him with which the statute made him chargeable. This could only be done by a last will and testament, duly executed, disposing of the whole of the testator's estate, real and personal. (Clarkson v. Clarkson, 8 Bush, 655; Clarke v. Clarke, 17 B. Monroe, 708.)

There is nothing in the circumstances connected with any conveyance made by the intestate to the husband of either of his daughters that can be held to so operate as to take it out of this rule, and the chancellor did not err in enforcing it as to the parties complaining.

3. Although Stevenson seems to have reaped the benefit of the conveyance to Jenkins, yet it acknowledges upon its face payment from Jenkins; and the evidence, outside of the deed itself, is so unsatisfactory and inconclusive as to leave it a matter of very great doubt whether it was intended as an advancement to Stevenson's wife, and also whether it was not made upon an actual consideration of some kind, disconnected from the relationship of the parties. Mrs. Stevenson ought not to have been charged with the value of the property conveyed by said deed.

4. The rule under consideration does not apply to the thirteen acres of land conveyed to Scholes after the death of his wife. There is nothing to show that it was executed pursuant to a promise to the donee made during the lifetime of his wife, or that he enjoyed the possession of the property at any time while his wife was alive. The presumption that this conveyance was intended as an advancement to the children of Mrs. Scholes can be supported under no known rule, and the exception to the item of the master's report, charging them with the value of this property, should have been sustained.

5. It is insisted that gifts made to grandchildren during the life of their parents ought to be treated and held to be advancements to the parents of such grandchildren.

The statute does not so provide, and its language seems to rebut any such inference or implication. The provision of the Revised Statutes is, "Any real or personal property or money given or devised by a parent or grandparent to a descendant shall be charged to the descendant or those claiming through him in the division and distribution of the undevised

estate of the parent or grandparent, and such party shall receive nothing further therefrom until the other descendants are made proportionately equal with him, according to his descendible and distributable share of the whole estate, real and personal, devised and undevised." (Chapter 30, section 17.)

The descendant to be charged is the person to whom the gift or devise has been made, or a descendant claiming through such person. A descendant to whose child a gift or devise may have been made does not fall within the language of the statute. This is admitted; but it is argued that the same liberal rule of construction, through which the words of the law are held to include gifts or devises to sons-in-law who are not descendants of the donor or testator, will also make them include gifts or devises made to the children of living descendants who are heirs or presumptive heirs of the donor or testator. There are essential differences between these two classes of persons. For many purposes the law treats the husband and wife as one person. The husband generally has the legal right to reduce to possession and make himself the absolute owner of all personal property given or devised to his wife; and when the right to take by the courtesy has once attached he can secure to himself a life-estate in all lands given or devised to her. Besides this, the husband is under a legal obligation to support his wife, and when property is given or devised to him by her ancestor it may well be presumed that it was intended to enable him the better to discharge this legal duty; and as in such a case the gift or devise inures to the direct benefit of the wife, the spirit of the statute requires that she shall be charged with the estate received by her husband.

With the children of a descendant the case is altogether different. They have none of the legal rights secured in the husband, and it is only in occasional instances that they can be charged with the legal duty of providing for and supporting their parents. The reason of the rule fails when it is attempted

to apply it to grandchildren, and it seems to us that under no recognized canon of construction can the language of the statute be made to include, as advancements to a descendant, gifts or devises made by the ancestor to his or her children. This construction does not lead to the anomaly pointed out by counsel.

Gifts to grandchildren, made whilst their parent, the immediate descendant of the party making the gifts, is alive, will not be converted into advancements to such grandchildren by the subsequent death of the parent during the lifetime of the grandparent. Such gifts are mere gratuities at the time they are made, and chargeable neither to the grandchildren nor their parents, and subsequent events can not and do not change their legal character, and none of the grandchildren of the intestate can be properly charged with gifts made by him under the circumstances above stated.

6. The heirs of Mrs. Scholes ought not to be charged with $900, the value of the strip of land containing fifty-four poles, embraced by the deed of Robinson of March, 1823. The intestate did not have secured to himself a life-estate in this strip. It was set apart to be used and occupied forever as a road. And the possession followed the title, because of the discontinuance of the public use, and not on account of the termination of an estate held by the ancestor. This strip should be valued as of the date of the conveyance, encumbered as it then was by the use secured to the public.

Said heirs were properly charged with the value of the realty conveyed to their mother by Casey.

7. There is not sufficient proof to sustain the exception based upon the alleged fact that Martin and wife and others of the heirs and distributees executed to the intestate receipts acknowledging the reception of their full shares of his estate.

8. Martin is entitled to nothing on account of the note for $7,500, executed to him by the intestate March 20, 1857, and he should be required to account for the sum of the credits

entered on said note. At the time of its execution the intestate, on account of old age and failing health, was mentally incapable of resisting Martin's influence. The circumstances under which it was executed tend to show that the intestate did not expect to pay it and that he did not fully understand its import. The consideration named on the face of the note is, in our opinion, inconsistent with the idea that it represented any actual subsisting indebtedness. But if the consideration be regarded as sufficient, then, when all the circumstances of the case are considered, Martin ought not to be allowed any thing on the note until he gives an account of his acts as agent for the intestate. His pleadings and the proof show that after the decay of the mental powers of the intestate, Martin collected considerable sums of money due and owing to him. If he intends to claim compensation for these services, it is his duty to make a settlement of his accounts. While the proof does not authorize a recovery against him for any part of the large sums appellants insist he ought to account for, it is preposterous for him to claim that he ought to be paid for transacting business as agent, and at the same time fail to make an exhibit of what he has done and what disposition he has made of such moneys as may have come into his hands while acting in that capacity.

The balance due from Martin to Powell, the intestate, on account of the property sold at the suit of the latter in the Kenton Circuit Court, in which the judgment was rendered in May, 1857, ought not to be charged as an advancement to Mrs. Martin. It is plain that this was an individual transaction between Powell and Martin, with which the wife of Martin had no connection whatever. Notwithstanding the admission made by Powell in open court that the claim had been settled in full, Martin subsequently acknowledged that such was not the case, and settled part of it by the conveyance of the house and lot charged to Mrs. Ross at $2,800.

The balance still due to Powell, amounting to something

over $4,000, Martin should be required to account for as a debt due from him to the intestate.

There are many other exceptions to the master's report. Some of them are not pressed in the argument of the cause, and many of them are not even noticed by counsel.

From the examination we have been able to make of the very voluminous record we have not discovered any sufficient reasons to conclude that the chancellor has erred in settling them, and except so far as his action is affected by the application of the principles announced in this opinion, his judgment is not intended to be disturbed. But for the errors of the judgment in principle and in detail, as heretofore set out, it is reversed on both the original and the cross-appeals, and the cause is remanded for a judgment conforming in all its details to the views herein expressed.

The chancellor may, if he thinks the ends of justice require it, permit the parties within reasonable time to take further proof as to any of the questions reopened by this opinion and judgment.