JUDGE PRYOR
delivered the opinion or the court.
Joshua B. Bowles died in the county of Jefferson on the 3d day of July, in the year 1873, the owner of a large and valuable estate estimated at about $400,000. His property consisted principally of real estate situated in the county of Jefferson, in the city of Louisville. He left surviving him the following children and grandchildren, his heirs and devisees, viz.: 1. James Bowles, an only son; 2. Margaretta Bowles, an only daughter; 3. Frank Barbour, Thomas J. Barbour, Medora Winchester, and Mary B. Bell, grandchildren, they being the children of his deceased daughter Mrs. R. N. Barbour;, 4. Mary E. Winchester, a grandchild, the only child of his deceased daughter Mrs. Mary E. Winchester.
Bv his last will and testament and by numerous gifts made *7 in his lifetime he divided a large portion of his estate between his children and grandchildren, but left undevised and undisposed of, a part of his estate valued at about $100,000. This undevised property passed to his heirs-at-law, and after paying testator’s debts must be so distributed as to equalize the heirs. This action in equity being instituted for that purpose, the important inquiry is, what property, and its value, each heir has received by gift and devise from the testator. Many questions of law and fact are presented by the record, but only such will be considered as are deemed essential in establishing the doctrine of equality contemplated by the statute in the distribution of the undevised estate.
The testator, by the third clause of his will, devises to his daughter Margaretta “ the rents and profits, during her natural life, of nine three-story brick houses in the city of Louisville (describing them), and at her death this property to her children, if any. If she dies without living issue, then this property to revert to my other heirs.”
By a codicil to his will, dated the 23d of February, 1865, he makes an additional devise to his daughter Margaretta of his then residence during her natural life, and fails to make any disposition of the interest in remainder, the same passing under the statute of descents to his heirs-at-law.
By the fourth clause of his will the testator devises to his daughter Mary Elizabeth during her natural life, and at her death to her living issue, two three-story brick houses; and if she dies without leaving living issue, then this property reverts to my other heirs. This daughter married Boyd Winchester, and died prior to the death of the testator, leaving surviving her an only child, Mary E. Winchester, who takes under the will the property devised to her mother, and inherits from her grandfather (the testator), being one of his heirs-at-law, an interest in the undevised estate.
Sec. 17, chap. 31'of the General Statutes, being similar in *8 every respect to the provision found in the Revised Statutes, provides: “Any real or personal property or money given or devised by a parent or grandparent to a descendant shall be charged to the descendant or those claiming through him in the division and distribution of the undevised estate of the parent or grandparent, and such party shall receive nothing further therefrom until the other descendants are made proportionately equal with him according to his descendible and distributable share of the whole estate, real and personal, devised and undevised. The advancement shall be estimated according to the value of the property when given. The maintaining or educating or the giving of money to a child or grandchild, without any view to a portion or settlement in life, shall not be deemed an advancement.”
The chancellor, through his commissioner, in ascertaining the value of the estate devised to Margaretta Bowles, charged her with the value of her life-estate in the homestead, in regard to which there is no controversy. The remainder in this property being vested in the heirs at her death, the propriety of this ruling is not questioned by counsel. It was further adjudged that she should be charged with the value of her life-estate only in the nine houses and lots in the city of Louisville, and it is now maintained by counsel for the appellees that she should have been charged with the value of the fee-simple estate in this property; and this being the most important question presented by the record will be first considered.
There is a manifest difference in the character of the two devises to the daughter Margaretta. Although she has a life-estate only in the family residence and an estate of the same duration in the nine houses and lots in the city of Louisville, the last-named property is devised to her for life, and at her death to her children; and if she dies without living issue, to the testator’s heirs-at-law. In these houses and lots the heirs have a remote contingent interest, with a bare possibility of acquir *9 ing a vested interest, in the event the tenant for life dies without children, and in the event the heir survives the life-tenant. If it could be known that the contingency upon which the heirs are to take would happen, as well as the heirs who Avon Id survive the life-tenant, then, the value of this contingent interest might be determined. As these facts can not be ascertained, and as there is no rule of laAv or equity by which the value of such contingent interests can be measured, and the devise being first to Margaretta and then to her children, she should have been charged Avith the value in fee-simple of the houses and lots. If she is only charged Avith the value of the life-estate, and should then have children, the absolute estate passes to her lineal descendants Avitliout any account taken of its value in the equitable adjustment of the rights of these parties.
The same character of devise was made to Mrs. Winchester, giving her an estate for life and then to her children. The object of the testator Avas to provide for his daughters and their descendants; and Avhether so or not, such is the eifect of these provisions of his will; and Ave see no injustice in recognizing the rule that Avhen the estate passes to the tenant for life, and then to his issue born or to be born, and no children in esse at the death of the devisor, the tenant for life must bear the burden in order to equalize the heirs; nor will the chancellor speculate upon the probability of there being issue in order to estimate the value of such a contingent interest as in this case, Avith a vieAV of relieving the life-tenant. There must be a fixed and uniform rule on the subject.
The case of Weyland v. Weyland, decided by Lord Harde-Avick, and reported in 2 Atkyns, page 633, bears a striking analogy to the case before us. In that case Weyland settled £5,000 old and new South Sea annuities upon himself for life, then upon Mrs. Weyland for life, remainder to his son for life, Avith remainder to his (son’s) intended wife for life, with *10 remainder to the issue of the marriage. Weyland died, and his widow relinquished all interest in the £5,000. Upon a bill brought for a distribution' of the estate the lord chancellor said, “I am of opinion that when a father makes a provision for a son on his marriage, all the limitations in such settlement to the wife and children of such son must be considered as. part of that advancement, and it is not the child’s estate for life only that should be valued and brought in.” The son was charged with the whole sum.
In the case of Barber against Taylor’s heirs (9 Dana, 86) the principle settled in Weyland v. Weyland was approved by this court. In that case Taylor died intestate, having conveyed a large tract of land to his son-in-law, Barber, reciting in the deed, “that he had conveyed the land as a part of the portion he had given to Barber with his daughter.” It was held that this was an advancement to the daughter and her children, and when seeking partition with the other heirs they must bring it into hotchpot.
Counsel for Margaretta Bowles insist that these authorities can not affect the case under consideration, for the reason that the statutes under which the opinions were rendered were unlike the provisions in the Revised and General Statutes. The 5th section of the statute of distributions (22 and 23 Charles II) provided in substance that “when the parent died intestate, and a child other than the heir-at-law had been advanced by the intestate in his lifetime by portion not equal to the share which will be due the other children, the estate of all the children shall be made equal as near as can be estimated.” The Kentucky statute of 1830 provided in substance that “in the distribution of the estate of any person dying intestate among his or her children, any advancement made by the intestate to a child or children, whether in real or personal estate or slaves, shall to the value thereof at the time of the advancement be taken and considered as so much *11 advanced to such child or children out of the whole estate of the intestate, and such child or children shall not inherit any portion of the remaining estate until the other children are made equal,” etc.
Under this act (1830) where the ancestor had made a partial devise of his estate the devises were not charged to the heir in distributing the undevised estate. That statute applied alone to eases where the ancestor died intestate. The Revised Statutes, as well as the General Statutes, apply not only to cases of intestacy, but also where there has been a partial devise of the testator’s estate by last will; in other words, equality is the rule in cases of both total and partial intestacy. Under our present statute, the same provision being in force when this will took effect, all the property and money devised, or all the property and money given by the ancestor in his lifetime must be charged to the heir receiving it if he participates in the distribution of the undevised estate. By the act of 1830 nothing but advancements could be charged against the heir, and in determining what constituted an advancement the intention of the intestate was the controlling fact. Now, in case of intestacy, total or partial, whether applicable to realty or personalty or money, the intention of the testator or intestate is never consulted, the cardinal object of the statute being to make those entitled equal in the distribution of the estate. “ The maintaining or educating or the giving of money to a child or grandchild without any view to a portion or settlement in life shall not be deemed an advancement.” (General Statutes, chap. 31, see. 17.)
This provision constitutes the only exception, and in all other cases the gift or devise must be charged when equality in distribution is made necessary under the statute. The intention of the intestate never controlled the question of valuation under the English statute or under any Kentucky statute since legislation has, been had on this subject. The *12 chancellor, in deciding wbat constituted an advancement by the ancestor, prior to the adoption of the Revised Statutes, looked to his intention at the time the money or property was given, and when adjudging it to be an advancement proceeded to fix the value. The fact that the gift was made, and that the intestate intended it as an advancement, afforded no rule by which the chancellor was to be guided in making his estimate as to value. He was required to charge it to the heir if an advancement under the old statutes, and under the present statute must charge it, whether intended as an advancement or not, and the rule as to valuation applies as well in the one case as the other. This view of the question is sustained by the cases of Cleaver and wife against Kirk’s heirs (3 Met.) and Stevenson v. Martin (11 Bush, 485).
The object of both the Revised and General Statutes is to charge the heir with the value of property which would not under the former statute have been regarded as advancements, ignoring the intention of the ancestor, for the purpose of effecting an equitable distribution. The legislative will is consulted, and not the intention of the testator or intestate; and this doctrine of equality as regulated by statute can only be defeated when the testator disposes of his whole estate. While the heir or devisee can not be compelled to surrender what he takes under the will, if he asks for a portion of the undevised estate he must account for the value of what he has received, and those of the heirs receiving minor portions by gift from the testator will be made equal to the others to the extent that the undevised estate can be made to produce such equality.
The rule may be regarded as fixed that where the estate given passes by conveyance or devise or otherwise to the tenant for life, with remainder to his child or children, the value of the fee-simple estate thus devised, even if there is no issue in esse at the death of the devisor, must be charged to the life- *13 tenant, ■ and a more contingent interest that the heirs of the ancestor may have in the event of the tenant dying without issue will not prevent the application of this equitable rule.
After the making of his will, by which the testator gave to his daughter Mary Elizabeth the rents and profits of certain houses during her natural life, and then to her children, etc., he handed to her husband a copy of that particular provision of the instrument, and introduced him to the tenants occupying the houses, and directed them to pay his son-in-law the rents, saying at the same time to the tenants that “he (the son-in-law) would thereafter be their landlord.” The husband of Mary E. controlled the houses and collected the rents from that date until the death of the testator. The devise to the wife of the rents and profits for life, aud then to her issue, was in substance a devise of the property itself, and as said by this court in the case of Williamson v. Williamson (18 B. Mon. p. 329), “There can be no foundation whatever for the distinction attempted to be drawn between the land itself and its issues and profits.”
It is now insisted by some of the heirs that the daughter of Mrs. Winchester, she having died, should account for the rents collected by the husband and father for the rent of •this property up to the demise of the testator. The devise •had been made, and although it could not take effect as such -until the death of the testator, it was his purpose to provide for their enjoyment of it at once. The right to the use and •control of the' property was given with a knowledge by both parties that the title would be perfected upon the death of the •devisor. It was a gift to the mother of Mary E. in part of the property itself with the right to the absolute title postponed until the testator died. The husband and wife could •have ejected the tenants and used the houses in any other manner. The language of the devise given the husband said in *14 effect to him, this is for your wife and her children; take it, and use it as you think best for their interests.
The property having been given, it was never contemplated by the testator that the rents should be charged to the heir so as to swallow up or greatly diminish the value of the devise itself, and if such was his expressed intention, in the absence of an agreement to pay rent, the gift of the property being established and the inchoate title afterward made perfect by the will and death of the testator, the chancellor would discard the intention so as to produce equality in the distribution. This is unlike the case of Shawhan v. Shawhan’s adm’r (10 Bush, 600). In that case there had been no gift of the land, either before or after the occupancy by the son; and the father dying intestate, the sole question was, whether the son should be charged with the rent of a valuable farm belonging to his father, the intestate, and occupied by the son for several years. He was made to account for the rent in the distribution. In the case of Montjoy v. Maginnis (2 Duvall, 187) the father dying intestate had given by parol a tract of land to his two sons. After his death, and leaving no writing perfecting the title, the other children refused to ratify the gift, and claimed that the two sons should account for rents. This court held it was the land that was given and not the rents, and as the heirs refused to execute the gift they could not, by repudiating it, create an obligation on the donees to pay rents.
It is further argued by the counsel that if there was a parol gift of this property, its value should* be ascertained at the time of the gift, and not when the title was made perfect and completed by the death of the testator. The well-settled doctrine on this subject in this state is, that the property must be estimated at its value when the gift is perfected; that so long as the gift or devise is revocable, although the donee may be in possession with the right to use it without accounting for rents by reason of the parol gift, he is chargeable with *15 its value at the testator’s death, or when the gift is perfected, and not. when the possession was delivered.
In the case of Barber against Taylor’s heirs (9 Dana), the possession was delivered to the husband and wife in the year 1814; the gift was perfected by deed in the year 1833. This court in that case said: “ Could the advancement be considered as complete and irrevocable from the moment of the verbal gift of the land, the statute of 1830 would fix the year 1814 as the time for estimating the value of it. But it was not then complete and irrevocable. As the gift was revocable by the donor until 1833, the donees had not the legal or equitable means of availing themselves of an increase in value by sale or otherwise.” Its value in 1833 was ascertained.
The gift in this case to Mrs. Winchester was initiated in the year 1868, and made perfect and complete by the will and death of the testator in 1873. The value of the property was properly estimated as of that date. This court, in the recent case of Stevenson against Martin (11 Bush, 485,) recognized this rule and said, referring to the case of Hook against Hook (13 B. Mon.), “It is settled that advancements shall be estimated at their value when made,” and when the advancement was by deed reserving a life-estate in the grantor, the value was fixed at the death of the grantor when the heir was in the enjoyment of the property with a complete title. Cases of hardship must necessarily arise under any rule regulating the time of valuation in cases of distribution. The rule here recognized has been long since established, and being just and equitable there is no reason for departing from it.
The gift to two of the children of Mrs. Barbour, Francis and Medora, of Diamond Island, is clearly shown. Their father was told in 1867 by the testator that he wanted this island for the two children. The possession was. surrendered to them. He had already placed James Bowles in the possession of the property given to him, and before the expira *16 tion of the year 1867 prepared and signed a codicil to his will, by which he devised this property to Frank and Medora. They entered, not as tenants, but as donees of the land, and under such circumstances they should not have been charged with the rent. The wife of Dr. Barbour, and the mother of these children, died in the year 1847. The testator purchased the island in the year 1857, and permitted his son-in-law to clear it up and cultivate it. In such a case his children were properly held not liable for the rent of the land while in the possession of their father, and used by him at the instance of the testator. (Barber v. Taylor’s heirs, 9 Dana; Stevenson v. Martin, 11 Bush.)
The testator by his will fixed a value on certain real estate devised to his grandchildren, Mrs. Bell, Mrs. M. Winchester, and F. Barbour. Testimony was introduced establishing the fact that the devisor placed too high an estimate upon it, and the chancellor held that the actual value must prevail as against that fixed by the will.
It is shown by the proof that at the time the testator conveyed to his son James his land, the value was fixed-by the testator, but not inserted in the deed. This value was much less than that fixed by the chancellor, the proof conducing to show that its real value exceeded the estimate placed upon it by the testator about $10,000. We see no reason for making a distinction in a case like this between the verbal intention of the testator as to value and his testamentary declaration as to the price to be charged the devisee. Where the whole estate is devised the intention of the testator must govern, but when he leaves a part of his estate undeviséd, and it becomes necessary for the chancellor to equalize the heirs in the distribution of the undevised estate, the intention of the testator will be no more consulted as to the value of the devise than a declaration of his intention to make no charge whatever of the property given. At best it can only be. con *17 sidered as other evidence in the case bearing upon the question of value. It is not the heir or devisee controverting the clause of the will under which he holds, but it is the act of the chancellor in his endeavor to produce that equality demanded by the statute. To permit the testator’s valuation to control in this class of cases would enable him to defeat the plain purpose of the statute, and prevent equality between his descendants in the distribution of the undevised estate. For the purpose of equalizing the heirs, if the property is valued too high by the testator, the chancellor should reduce it as readily as he would increase it when too low an estimate has been placed upon it.
The case of Hook v. Hook (13 B. Mon. 528) is not in conflict with this view of the question.. The court in that case said, “ A 'testator may, by a statement in his will of the amount advanced to a devisee, estop him from controverting the fact so far as he asserts any claim under the will.” This is doubtless the law when applied to a will devising the whole estate of the testator, and in this light the language must have been used by the court, as the only question presented in that case was as to the period when the property given should be valued, and no will had in fact been made. If the intention of the testator is allowed to intervene and control the chancellor it at once precludes him from enforcing the letter as well as the spirit of the statute.
A testamentary declaration of intention will not be allowed to affect the distribution of the undevised estate. (Clarke v. Clarke, 17 B. Mon.; Clarkson v. Clarkson, 8 Bush, 660.)
Some years prior to the death of the testator his son James Bowles and his two daughters Margaretta and Mary Elizabeth made a trip to Europe. They were traveling for about twelve months, and their expenses, paid by the testator, amounted to $15,000. In the settlement with the other distributees they are charged with this sum, and of which they *18 complain. .There is evidence conducing to show that the testator, in talking of this contemplated trip to Europe, remarked to his son-in-law, Dr. Barbour, that his (Barbour’s) children should lose nothing by it, and other remarks indicating a purpose at least by the devisor of making a donation to his grandchildren of whatever might be necessary to equalize them by reason of this expenditure for his children. The devisor being a man of large means and in a condition to permit his children to expend money for purposes of mere temporary enjoyment, it was not unnatural or unreasonable for him to sanction this expenditure of his own means. These three were all of his children then living.
His son had recently married, and all of them up to that time were being maintained by him and regarded as members of his family. Possessed of an ample fortune, an expenditure of such a sum for the amusement, health, or education of his children can not be regarded as more extravagant than an expenditure of four or five hundred dollars by an ancestor possessed of an estate valued at $10,000, in defraying the expenses of his son or daughter to the cities of New York or New Orleans. In neither case should it be considered as an expenditure to the child with a view to a portion or settlement in life. To establish a contrary rule would be to deprive the parent of giving and the child from receiving the smallest donation in the way of money for purposes of amusement or pleasure without the child’s accounting for it in the final distribution of the parent’s estate. Nor will the intention of the testator control the chancellor in determining this question.
If the intention of the testator is to control the gift of money, then the chancellor can not charge the heir with money received from the parent or ancestor when there is proof showing that when the money was given the donor declared it was not his purpose to charge the heir with it in the final disposition of his estate, that he had not given it with *19 a view to a portion or settlement in life. If. the testator, when advancing money to pay the expenses of the European tour, had also given his son James $10,000, with the expressed intention that it was not to be charged to him, can it be maintained that this sum should be excluded from the estimate in making the distribution ? if not, upon what process of reasoning is the intention of the testator permitted to make that a charge against the devisee or heir that otherwise would not be considered as given with a view to a portion or settlement in life?
The intention of the testator will not control either as to the gift of money or land. In determining whether the gift to the heir is within the exception provided by the statute, the chancellor must take into consideration the character and value of the ancestor’s estate, the sum of money given the children, and the purposes for which it is to be applied; and while no well-defined rule can be prescribed, the exception in the statute “ applies alone to money given for purposes of amusement, or health, or education and maintenance, or temporary enjoyment, and not with a view to its investment in property or its appropriation in any mode in which it may be permanently enjoyed.” (Clarke v. Clarke, 17 B. Mon. 707.)
In administering the provisions of this just and equitable statute with a view of equalizing the heirs, the intention of the testator or intestate becomes unimportant, and an attempt by the chancellor to follow it must necessarily result in disregarding the leading idea of the legislative will; viz., equality between the heirs.
After a careful consideration of the testimony on the question of value, and particularly the proof applicable to the property conveyed to the appellant James Bowles, we must approve the action of the chancellor, and will not disturb the valuation.
The devise to the grandson Thomas J. Barbour of an *20 annuity for life of $500 must be carried into effect. He can not be compelled to take its value in money, and it was error so to adjudge.
This case is reversed on the original and cross-appeals, and remanded for fui'ther proceedings consistent with this opinion.
The costs in this court must be paid by the executor out of the undevised estate or its proceeds. It should be charged to the common fund.