## Edwards v. Livesay.

(Decided May 6, 1924.)

### Appeal from Rockcastle Circuit Court.

1. Descent and Distribution—Nature of Advancement to Child and Necessity for Bringing Excess Into Hotchpot.—Advancement to child does not constitute debt to parent, and, if advancement is more than child's part of estate, he cannot be required to bring excess into hotchpot, but, if advancements varying in size have been made to children, those receiving less are entitled to be made equal before any further distribution of estate is made.

2. Executors and Administrators—Duty of Administrators to Equalize in Case of Advancements and Distributee Entitled to Sue for Surcharge.—Where advancements made by intestate to children were unequal, it was administrator's duty to equalize, and, having failed to do so, distributee who suffered had right of action to surcharge settlement and obtain correct settlement of estate.

3. Descent and Distribution—Time for Valuing Land Given as Advancement.—Where intestate settled children on different tracts of land, but did not execute deeds until years later, in determining amount of advancements for purpose of distributing estate land should be valued as of date when deeds were made and not date child took possession, and without any accountability for rents or improvements.

4. Witnesses—What Distributee May or May Not Testify to in Suit to Surcharge Settlement of Administrators.—In suit by distributee to surcharge settlement of administrators for not equalizing advancements, neither of distributees could testify for himself as to any act or declaration of intestate father, but each was competent witness for any of other distributees to testify as to any transaction of father or any act done or omitted to be done by him.

5. Evidence—Admissibility of Declarations of Intestate Donor as to Advancements.—Declarations of intestate donor prior to transfer or contemporaneous with it are competent, but subsequent declarations are inadmissible unless part of res gestae or against interest of donor, as affecting advancements.

DENTON & PERKINS, L. W. BETHURUM and S. D. LEWIS for appellant.

J. W. BROWN and C. C. WILLIAMS for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

George Livesay died intestate a resident of Rock-castle county on March 8, 1915. He left surviving him five sons, one daughter and the children of a deceased daughter, Laura B. Edwards. In April, 1915, J. B. Livesay and W. D. Livesay, two of his sons, qualified as the administrators of the estate. They filed their settlement with the county judge on July 27, 1918, showing that $17,562.68 had come to their hands and that they had distributed this equally among the distributees, less cost of administration and debts without any consideration of advancements. On November 14, 1919, this suit was filed by George S. Edwards, the son of Laura B. Edwards, seeking to surcharge the settlement of the administrators, and alleging that each of the other children had received large advancements which should have been charged to them and that before they received anything further out of the personal estate the other distributees should be made equal with them. He prayed that the advancements be ascertained and that the defendants be required to pay into court such sums as might be necessary to equalize all of the heirs in the estate. An answer was filed controverting the allegations of the petition. A large mass of proof was taken and on final hearing the circuit court dismissed the petition.

At the outset it may be proper to state briefly the nature of the action and the relief to which the plaintiff was entitled if he established the facts alleged by him. An advancement to a child does not constitute a debt from a child to a parent. If the advancement is more than a child's part of the estate he can not be required to bring the excess into hotchpot and account for it, but if advancements varying in size have been made to the different children, those who have received less than the others by way of advancement are entitled to be made equal with the others before any further distribution is made of the estate of the intestate left at his death. In this case the administrators received something over seventeen thousand dollars. If the advancements were unequal this money should not have been divided equally between the distributees, but those who had received less than the others should first have been equalized and then the remainder of the estate should have been distributed equally. It was the duty of the administrators to do this, and if they failed to do it the distributee who suffered

a loss by reason thereof had a right of action to sur-
charge the settlement and to obtain a correct settlement
of the estate. This in substance was the plaintiff's cause
of action and the demurrer to the petition was properly
overruled.

The judgment of the court dismissing the plaintiff's
petition seems to have been based upon a mass of proof
showing that the intestate in the later years of the 19th
century settled his children on different tracts of land
he owned, telling them that he would give it to them, and
that these tracts at the time of such settlements, as land
was then selling, were each of value $1,500.00. He, how-
ever, did not make any of the children a deed then—the
deeds were made some years later—and the first question
in the case is whether these lands are to be valued as of
the date when the child took possssion or as of the date
when the deed was made.

This is not a new question in this court. In Barber
v. Taylor's Heirs, 9 Dana 88, the circuit court allotted to
each of the children who had been settled by the father
on land in 1814 without any written evidence of the gift,
the tract which each had occupied, estimated at the time
of partition, without regard to improvements which had
been made by the occupants respectively, and charged
the children with its value estimated at the date of the
conveyance in June, 1833. Holding this correct the court
said:

"Could the advancement be considered as com-
plete and irrevocable from the moment of the verbal
gift of the land, the statute of 1830 would fix the year
1814 as the time for estimating the value of it.
But it was not then complete and irrevocable. It
was revocable and initiate only until the conveyance
made it irrevocable and consummate. Had the land,
become greatly depreciated it would be unreasonable
to charge it in the partition at its greater value in
1814, because, as the gift of it was revocable by the
donor until 1833, the donees had not the legal or
equitable means of availing themselves of that
greater value by sale or otherwise. And, doubtless,
Taylor himself intended that his grandchildren
should receive as much less of his estate as the value
of this land at the time he parted with all control
over the use and title, and thus finally and irrevocably
determined that it should not belong to any of his
other heirs."

This case was followed in Hook v. Hook, 13 B. Monroe 527; Stevenson v. Martin, 11 Bush 493, and Bowles v. Winchester, 13 Bush 14. In the last case the court said:

"The well settled doctrine on this subject in this state is, that the property must be estimated at its value when the gift is perfected; that so long as the gift or devise is revocable, although the donee may be in possession with the right to use it without accounting for rents by reason of the parol gift, he is chargeable with its value at the testator's death, or when the gift is perfected, and not when the possession was delivered."

The rule was again followed in Ward v. Johnson, 124 Ky. 4. The court said:

"The evidence shows that Johnson settled his three daughters upon the tracts of land which he afterwards conveyed to them, promising to make each of them a deed, and telling them that they could improve it and pay the taxes, and that they would not have to account for any rents, and that it should be their land. When he subsequently conveyed the land to them, he simply carried out the agreement which he had made with his daughters when he settled them on the land. The land should be treated as an advancement as of the date when the deeds were made and the gift perfected."

Under the well settled rule so often declared by the court the land conveyed to the different children must, in each case, be charged to them at its value at the time of the conveyance, considering the land in the same condition as when they received it and without any accountability for rents. The valuation placed by the testator upon the land can not control.

"To permit the testator's valuation to control in this class of cases would enable him to defeat the plain purpose of the statute, and prevent equality between his descendants in the distribution of the undevised estate. For the purpose of equalizing the heirs, if the property is valued too high by the testator, the chancellor should reduce it as readily as he would increase it when too low an estimate has been placed upon it." (Bowles v. Winchester, 13 Bush 17.)

The evidence does not show that the different tracts of land were of equal value at the time of the conveyance, considering each tract in the condition it was when received by the distributee. The proof has not been so taken as to enable us to intelligently determine the rights of the parties on this basis, and on the return of the case to the circuit court either party may take additional evidence.

A number of questions were raised by the exceptions filed to the different depositions. These will be briefly disposed of. Neither of the distributees may testify for himself as to any act or declaration of the father, but each of them is a competent witness for any of the other children, to testify as to any transaction of the father or any act done or omitted to be done by him. (Goff v. Goff's Executors, 176 Ky. 243.)

Quite an amount of proof was offered as to declarations of the father, George Livesay, most of them being merely narrative statements telling what he had done in the past. In Bailey's Admrs. v. Barclay, 109 Ky. 639, this court thus stated the rule as to the admissibility of such declarations:

"In passing upon the competency of declarations made by an ancestor as to the intention with which the gift was made, it was generally held that declarations of the donor prior to the transfer or contemporaneous with it were competent, but that subsequent declarations are inadmissible, unless a part of the *res gestae,* or against the interest of the donor."

This case was followed in Hill v. Hill, 29 R. 203.

Upon the return of the case the court will follow this rule in determining the competency of the testimony as to the declarations of the intestate.

Judgment reversed and cause remanded for further proceedings consistent herewith.