## Gossage et al. v. Gossage's Adm'r et al.

Feb. 2, 1940.

E. Bertram and Bertram & Bertram for appellants.

J. P. Harrison and J. M. Kennedy for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

W. A. Gossage died intestate on April 30, 1937, leaving surviving him a widow, six sons, and two daughters. Two sons, J. V. Gossage and J. R. Gossage, had predeceased him, leaving children surviving, and on March 22, 1939, during the pendency of this appeal, his widow died. At the time of his death, W. A. Gossage was approximately eighty-six years of age, all of his children had married and had families and homes of their own. Several years before his death he gave to each of his children, except a daughter, Mrs. Hill, $500 and a similar amount to each of the two groups of grandchildren representing his deceased sons. Shortly after his death, by agreement of all the parties, a similar amount was paid to Mrs. Hill. On January 27, 1926, he and his wife executed and delivered to their sons, Bluford and Lisco, deeds conveying to each of them a farm, and on February 4, 1926, he and his wife executed and delivered a deed conveying a farm to their son, W. J. Gossage, Jr. Each of these three deeds contained in substance the following recital copied from the deed to Bluford:

> "That the party of the first part hath this day bargained and sold a certain tract or parcel of land to the party of the second part his life time and then to his children for and in consideration that the party of the second part shall pay to the party of the first part one-third (1/3) part of what he shall make on said land during the life of the party of the first part including Mrs. Gossage and shall pay the taxes on said land, and by these presents do convey and transfer said land to the party of the second part and his children said land being in Wayne County, Kentucky, on the North side of Cumberland River and being more definitely described as follows:"

The sons to whom the three conveyances above mentioned had been made, immediately took possession, improved the farms conveyed, and thereafter complied with the conditions of the conveyances by paying the taxes and paying one-third of the profits of the farms to their father during his lifetime, and their mother after his death. On December 16, 1932, he and his wife "in consideration of love and affection" conveyed a farm to each of the following children: W. J. Gossage, Jr., Emily L. Hill, M. R. Gossage, and Rettie McBeath. The deed to W. J. Gossage, Jr., conveyed to him the fee simple title to two tracts adjoining that previously conveyed to him, but the other three deeds executed on that date contained a provision that the conveyance was to grantee for life with remainder to his or her children and constituted the grantee's share of the father's estate. On the same date the father and mother conveyed to their sons, Bluford, Lisco and H. E. Gossage, jointly, a farm referred to in the record as the Sutherland farm, the deed containing this provision:

"It is agreed and understood that this conveyance is not effective until our death. As long as we or either of us live we are to have the proceeds from this farm. After our death the three above second parties may divide the farm or sell to each other."

On September 2, 1933, "in consideration of love and affection and $200.00 evidenced by note," the father and mother conveyed a farm to the three children of their deceased son, J. R. Gossage, jointly during their lives with remainder to their children, and this deed likewise contained a provision that the grantees were to receive nothing further from the estate of the grantor. It will thus be seen that of the heirs at law only the son, H. V. Gossage, and the children of the deceased son, J. V. Gossage, received no advancements from W. A. Gossage.

Prior to the entry of the judgment in the litigation hereinafter referred to, it was agreed by the parties and so recited in the judgment that the value of the farm conveyed to the son, Lisco, on January 27, 1926, was $2,250; that the value of the farm conveyed to the son, Bluford, on the same date was $4,000; that the value of the farm conveyed to W. J. Gossage, Jr., on February 4, 1926, was $5,000; that the farms conveyed respectively to the daughters, Mrs. Hill and Mrs. McBeath, and to the son, M. R. Gossage, on December

16, 1932, were of the value of $1,500 each; that the farm conveyed to W. J. Gossage, Jr., on December 16, 1932, was of the value of $1,300; that the net value of the farm conveyed to the children of the deceased son, J. R. Gossage, on September 2, 1933, after deducting the lien for $200 retained in the deed, was $1,500; and that the Sutherland farm conveyed to the three sons, Bluford, Lisco and H. E. Gossage, on December 16, 1932, was worth $8,500.

By contracts executed on July 7, and September 17, 1937, the parties at interest, with the exception of the mother and the infant grandchild, Winfred, who was the daughter of the deceased son, J. R. Gossage, attempted to effect a settlement of the estate of W. A. Gossage by agreeing that all of the conveyances referred to should be treated as advancements, the value of the advancements ascertained, and the heirs who received the same charged with the value thereof. However, subsequent disagreements arose, and on December 5, 1938, this action was instituted by the Administrator and certain of the heirs against the remaining heirs, in which enforcement of the contracts referred to was sought. In their answer, the children who had benefited by the 1926 conveyances and the conveyance of the Sutherland farm in 1932, asserted that the 1926 conveyances were not advancements, and that they had been misled in treating them as such in the contracts referred to, and that the value of the advancements represented by the conveyance of the Sutherland farm could not be determined until after the death of their mother. We shall not attempt to set forth the various claims of the respective parties asserted in their pleadings. It is sufficient to say that after taking proof on numerous subjects it was tacitly conceded that the contracts referred to were unenforceable because neither the widow of W. J. Gossage, nor the grand-daughter, Winfred, were parties thereto, and since the valuation of the various properties had been agreed upon, only questions of law remained which the Court decided adversely to the appellants by adjudging that all of the conveyances were advancements, and, that in each instance where an interest continuing after the death of the father was reserved to the mother, the value of her life estate should be ascertained according to the mortality tables and deducted from the agreed value of the property affected. It is thus apparent that the contracts referred to did not control the Chancellor

in his decision of the case and can have no bearing upon our decision. The questions which we are called upon to decide are (1) whether the 1926 conveyances were in fact advancements; and (2) whether the value of the advancement represented by the conveyance of the Sutherland farm in 1932 should have been determined as of the date of the death of W. A. Gossage by deducting the value of the life estate reserved to the widow, or whether the valuation should have been postponed until the extinguishment of the life estate by the death of the widow.

(1) In determining whether the 1926 conveyances were advancements, the intention of the intestate is not to be considered. The inquiry is limited to the nature of the consideration for the transfer. If not sufficient to indicate that a sale was actually contemplated, the transaction will be adjudged an advancement. True, it is not necessary that the consideration be equivalent to the price which would have been charged a stranger, since allowance may be made for the natural affection between parent and child. Wakefield et al. v. Gilleland's Administrator, 18 S. W. 768, 13 Ky. Law Rep. 845.

On the other hand, a transfer is not a sale merely because it is denominated such, and a recited consideration may be shown to be fictitious without an allegation of fraud or mistake. It is true that the Chancellor may take into consideration the character and value of the ancestor's estate, the amount given the children, and the purposes for which they are to be applied, but the object of Section 1407, Kentucky Statutes, is to procure equality in the distribution of undevised estates, and the essential question in cases of this kind is always whether the transaction was in fact a gift or a sale to be determined by the character of the consideration. Bowles v. Winchester, etc., 13 Bush 1; McCray et al. v. Corn et al., 168 Ky. 457, 182 S. W. 640; Clarke v. Clarke, 17 B. Mon. 698; Isgrigg et al. v. Isgrigg, 179 Ky. 260, 200 S. W. 478; Wakefield et al. v. Gilleland's Adm'r, 18 S. W. 768, 13 Ky. Law Rep. 845. In the light of these principles we are unable to discover in this record any facts which would justify us in holding that the conveyances made to the three sons in 1926 were sales based upon valuable considerations. The testimony showed that the customary rental of lands of a quality similar to those conveyed in 1926, was from one-third to one-half of the profits. The deeds did not specify what por-

tions of the property were to be cultivated, or that the grantees should personally operate the farms. The grantees, no doubt, could have leased the lands to others on contracts which would have yielded the rental due the grantors and the amount of the taxes while they devoted their attention to the transaction of other business. At least it seems certain that the father, without parting with the title to the farms, could have obtained as much income therefrom in the way of rentals as he received under the conveyances to his three sons. Appellants argue that the conveyances made by the father and mother in 1932, when analyzed, indicate that the conveyances made in 1926 were not intended as advancements, but as before pointed out, we are not concerned with the father's intent. By no process of reasoning can we conclude that one would voluntarily *sell* his farms for a consideration no greater than he could have derived from the rentals thereof, and hence we are compelled to hold that the undertaking of the grantees to pay to the grantors during their lives one-third of what the grantees "shall make on said land" and to pay the taxes was not a sufficient consideration to support a sale of the land to the grantees as distinguished from an advancement.

(2) Appellants' contention that the valuation of the advancement represented by the conveyance of the Sutherland farm in 1932 should have been postponed until the death of Mrs. Gossage is based upon a misconstruction of the rule announced by this Court that where a life estate is reserved in the donor of the advancement, the value of the advancement is to be fixed as of the date of the death of the donor when the donee comes into full possession, and not as of the date of the conveyance. Stevenson v. Martin, 11 Bush 485; Hook v. Hook, 13 B. Mon. 526, 527; Bowles v. Winchester, supra; Edwards v. Livesay, 203 Ky. 53, 261 S. W. 839. But this rule has no application where a life estate is reserved for the benefit of a person other than the donor; or, where the conveyance is to a child for life with remainder to his descendants. In the former case the value of the life estate which continues after the death of the donor is to be ascertained as of the date of the death of the donor and deducted from the value of the fee. Corpus Juris, Vol. 18, pages 917, 918; American Jurisprudence, Vol. 1, pages 732, 733. And in the latter case, the value of the life estate in the child, who is the

donee in the advancement, is ignored and the value of the fee as of the death of the donor charged as an advancement against the recipient of the life estate. Barber v. Taylor's Heirs, 9 Dana 84; Bowles v. Winchester, supra. It is realized that the exact question presented in this case by the conveyance of the Sutherland farm with life estates reserved both in the donor and his wife, has never been passed upon by this court and that the language employed in our opinions dealing with cases where the life estate is reserved in the donor alone is subject to the construction placed upon it by counsel for appellants. But it would be extremely impracticable to postpone the settlement of estates for indefinite periods awaiting the termination of life estates, when it is a simple matter to determine the value of a life estate by the mortality tables, and by deducting such value from the value of the fee, ascertain the value of the remainder, which, after all, is the subject of the advancement. Necessarily inequalities will result as long as the exact duration of human life remains unascertainable, but the administration of the law must be pracitcable to be of value and adopt the lesser of two evils when the attainment of theoretical perfection is impossible. In the present case the adoption of the practical method by the trial court in ascertaining the value of the advancements in question has redounded to the benefit of the appellants, as their mother lived less than two years after the death of the father, although the value of her expectancy, which was deducted from the value of the fee in determining the value of the advancement charged to appellants, was calculated on an expectancy of 4.66 years.

Since the values of the properties were agreed upon, we perceive no error in the action of the Chancellor in himself making the mathematical calculations necessary to determine the value of the advancements; and, since no ruling on the exceptions to the depositions was made by the Chancellor, these exceptions will be regarded as having been waived. Black v. Noel's Adm'x, 240 Ky. 209, 41 S. W. (2d) 1100.

Judgment affirmed.