**Roy THOMAS et al., Appellants,**

**v.**

**Rena THOMAS et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 15, 1965.

Rehearing Denied Feb. 11, 1966.

Reginald L. Ayers, Bell, Orr & Reynolds, Bowling Green, for appellants.

G. D. Milliken, Jr., Milliken & Milliken, Bowling Green, for appellees.

DAVIS, Commissioner.

Appellants seek to have treated as an advancement a conveyance made by Kate Thomas to the appellees, Rena and Elizabeth Thomas, sisters of appellants. KRS 391.140. Related issues are presented as to the appropriate date for fixing the value of the advancement (if it should be determined to be one) and whether the evidence supports the value urged by appellants. The trial court found as fact that the conveyance was made " * * * for valuable consideration consisting of services rendered by Elizabeth Thomas and Rena Thomas (appellees) to their mother, Kate Thomas, over and above the usual services rendered by a daughter to a mother and that said deed was not a gift". Based on that factual conclusion, the trial court adjudged that the conveyance of the farm by Kate Thomas

to her daughters, the appellees, was not an advancement.

Kate Thomas was the mother of seven children. Two of them, Rena and Elizabeth, lived with her all of their lives, except for approximately a year when Elizabeth had a home with her husband. Elizabeth's marriage ended in divorce, after which she returned to Kate Thomas' home to live. Kate Thomas died intestate, June 11, 1961. William Thomas, husband of Kate Thomas, died in 1931; Mrs. Thomas never remarried.

After the death of Kate Thomas the appellees lodged for record in the Warren County Clerk's office the deed which is the subject of this litigation. The deed was signed and acknowledged by Kate Thomas on April 19, 1954, and by its terms conveyed a farm of sixty-nine acres to Rena and Elizabeth Thomas, in survivorship, subject to a life estate reserved by Kate Thomas, the grantor. The consideration stated in the deed is " * * * the sum of $1.00 cash in hand paid, and other good and valuable consideration paid * * * ". No U. S. documentary stamp was affixed to the deed.

Rena and Elizabeth Thomas presented evidence that they had rendered extraordinary services to their mother for many years. As noted, the trial court found as fact that the services were "over and above the usual services rendered by a daughter to a mother". Without detailing the proof, we assume, but do not decide, that the services were extraordinary and compensable under the rule enunciated in Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S.W.2d 459. No proof was offered as to the monetary value of the services.

Appellants contend that this case is governed by Remmele v. Kinstler, Ky., 298 S. W.2d 680; Gossage v. Gossage's Adm'r, 281 Ky. 575, 136 S.W.2d 775; Ecton v. Flynn, 229 Ky. 476, 17 S.W.2d 407; Thompson v. Latimer, 209 Ky. 491, 273 S.W. 65; Mc-Cray v. Corn, 168 Ky. 457, 182 S.W. 640, and Hook v. Hook, 52 Ky. 425, 13 B. Monroe 526. We agree that the authorities cited have determinative significance here.

▮▮▮▮▮ The opinions just cited make clear certain fundamental rules applicable in the case at bar. It is established that the grantor cannot convert an advancement into something else merely by reciting that the transfer is not an advancement. It is necessary that the transfer be made "in payment of a valid claim for services" to escape treatment as an advancement. It is "not sufficient to show that services had been rendered which might have answered as a consideration for the conveyance, but it must be shown that it was the intention of the parties, at the time of the execution of the conveyance, that the services should be thus satisfied".

In light of these principles, we take note of the evidence as presented by Rena and Elizabeth Thomas as it relates to the conveyance. After enumerating various services she had rendered to her mother, Rena Thomas testified, in part:

"Q. 110: Then, are you saying then that the property was conveyed by your mother to you in appreciation for the past services that you had—

"A. For my lifetime, for my life's work, yes sir.

"Q. 111: During this period of time that—

"A. She insisted, I will tell you this, Reggie, right now. She insisted that she do something, and her idea was for the homeplace to be ours because she felt that we would need a home, well, we told her that that was just too much, more than we would want, and then she said, one day she said I am going to do something for you, I might not live long so then is when she came in and did this.

"Q. 112: Well, then—

"A. She said I know you have earned more than this, but I will remember you with that much. * * *

That was only to pay me for my services of all my life's work, was all that was for. She said that was what that was for, now."

Elizabeth Thomas testified that she had not known that her mother planned to execute the deed. When asked when she had learned of the deed, she responded:

"A: The afternoon after the deed had been made, I believe it was April 19 * * * when Rena came for me at the Electric Plant Board she informed me that mamma had deeded us this property for our services rendered for our lifetime."

Later Elizabeth Thomas deposed:

"Q. 96: Is it your contention, Miss Thomas, that the conveyance by your mother to you of this property was done in appreciation for the services that you have rendered to her prior to the date of this deed?

"A. It was done in appreciation for the services that we offered her during our lifetime. * * * She made that deed to us for our services, in payment of our services, was what she conveyed that deed to us for."

It does not appear that either of the daughters had ever presented any claim against their mother. The record fails to disclose that either of them made any reckoning of the total "bill" for their services— nor did either of them profess to know the value of the property conveyed to them. The conclusion is inescapable that the mother made the conveyance "in appreciation" for the services—but not "in consideration" of them. In Gossage v. Gossage's Adm'r, 281 Ky. 575, 136 S.W.2d 775, it was written:

"In determining whether the 1926 conveyances were advancements, the intention of the intestate is not to be considered. The inquiry is limited to the nature of the consideration for the transfer. If not sufficient to indicate that a sale was actually contemplated, the transaction will be adjudged an advancement. True, it is not necessary that the consideration be equivalent to the price which would have been charged a stranger, since allowance may be made for the natural affection between parent and child. Wakefield et al. v. Gilleland's Administrator, 18 S.W. 768, 13 Ky.Law Rep. 845.

"On the other hand, a transfer is not a sale merely because it is denominated such, and a recited consideration may be shown to be fictitious without an allegation of fraud or mistake. It is true that the Chancellor may take into consideration the character and value of the ancestor's estate, the amount given the children, and the purposes for which they are to be applied, but the object of Section 1407, Kentucky Statutes, is to procure equality in the distribution of undevised estates, and the essential question in cases of this kind is always whether the transaction was in fact a gift or a sale to be determined by the character of the consideration."

 Thus, it is made clear that the transaction must be a "sale" as distinguished from a "gift", if it is to avoid the "advancement" statute. The transaction at hand lacked many elements of a true sale. There was no meeting of the minds as to the price being paid; there was no intimation whether the "consideration" included the obligation of the two daughters to continue to furnish services to the mother; there was no release to the mother against the unpresented "claim" for services. In short, the record makes it clear that the mother executed the deed of her own volition, not in response to any press for "payment" from the daughters. The absence of U. S. documentary stamps lends support to the "gift" theory and is in derogation of the "sale" theory. It is our view, therefore, that the questioned conveyance was an advancement within the purview of KRS 391.140.

The trial court did not reach the question of fixing an evaluation upon the advancement. Conflicting evidence was presented touching the matter. Since the issue has never been resolved by the trial court we will not pass upon it in this state of the record. That factual determination is to be made by the trial court.

The judgment is reversed for further proceedings consistent with the opinion.