ROBERT H. HOSKINS, ET AL. *v.* C. C. ARTERBURN, ET AL.

ANN ARTERBURN *v.* R. H. HOSKINS, ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—291.]

**Construction of Will.**

In construing a will the intention of the testator when ascertained must control, and where a testator by the 5th clause of his will provides that "All the rest and residue of my estate, real, personal and mixed, I devise and bequeath to my five children (naming them), to be divided among them equally, share and share alike, but upon the conditions, restrictions and limitations hereinafter set out," and by the 9th clause provides that "I hereby invest my executors * * * with full title to all my lands and authorize them to sell any part or portion thereof * * * And I authorize and direct my executors to make a division of my estate as herein provided, and in conveying to my daughters their share * * * of my lands I direct my executors to convey to said daughters respectively, for their sole and separate use during their lives, and at their death to their child or children," it is held that said daughters took only a life estate in such lands, and where one of them died before any conveyance to her, not leaving any child or children, her share of said estate will be distributed and and among all of the heirs of the testator.

**Provisions in Will Against Contest.**

Where the testator provided in his will that "should any one or more of my children seek by legal means to set aside any charge I have herein made against him or her, or to set aside this will, then I direct my executors to withhold from said child or children any part or portion of my estate," etc., it is held that where legatees accept the testator's bounty in such a case neither the life tenants nor those in remainder will be allowed to say that the advancements charged against the life tenants had never been received.

APPEALS FROM LOUISVILLE CHANCERY COURT.

October 1, 1885.

OPINION BY JUDGE PRYOR:

This action involves the construction of a will of Norbourn Arterburn, the right of his widow to dower, and also the mode of partitioning certain undivided estate between the heirs of the devisor. It is here on the appeals of *R. H. Hoskins v. C. C. Arterburn* and *Ann Arterburn v. Hoskins*. The will is as follows:

"I Norbourn Arterburn, do make and publish this my last will and testament, being the only one I have ever made.

"1.  I direct my executors to pay all my just debts, including my funeral expenses, as soon as practicable.

"2.  I give and bequeath to my beloved wife all of my household goods and furniture, and all wagons and other vehicles which I own, together with all the stock of every kind on the place and farming implements. If my wife does not wish to retain or have any portion of the stock or farming implements, then my executors are directed to sell the same at private sale in the exercise of their judgment. I have about $20,000 insurance on my life for the benefit of my wife, which I desire my executors to invest for her in some good security and to pay her the interest thereon.

"After her death I desire my executors to distribute that fund among my children as hereinafter provided. Should the insurance money not be collected for any reason, then I direct my executors to set apart to her so much or such parts of my estate as may be necessary to secure her a comfortable support so long as she lives.

"3.  I devise and bequeath to my afflicted son, Edward, so much or such part of my estate as my executors shall deem sufficient for his comfortable maintenance and support. The part or portion devised to Edward is to be held in trust for him by my executors hereinafter named, and full authority is given my executors to sell and convey any portion of my estate to raise a sufficient sum of money for the purpose of this trust. I give full authority to my executors to invest the estate given to Edward in any security which they may deem best, and the income thereof they are to use in providing reasonable compensation to a servant to attend him. After the death of my wife, I desire my daughter, Ophelia, to have the custody of my said son, and in case of her death I desire that he be permitted to select a home among my children.

"4.  I devise, upon the conditions hereinafter named, to Richard Murphy, called 'Dick', the colored boy who waits on my son, Ed-

ward, during his natural life, remainder to my heirs, a tract of about sixteen acres of land on the north side of the Brownsboro turnpike road, being the southwest corner of the Taylor tract, known as the 'Molly Cabin' or Lentz place.  But this devise is upon the express condition that Dick remain true and faithful to my son, Edward, during his life, in which event he is to be reasonably compensated during the life of Edward out of the provision made for him, and·at the death of Edward the devise is to become good upon the terms and limitations hereinbefore set out.

"5.  All the rest and residue of my estate, real, personal and mixed, I devise and bequeath to my five children, namely, Ophelia Hardin, wife of A. W. Hardin; Bettie Shanks, wife of John Shanks; Mary Emma Hoskins, wife of Robert H. Hoskins; Anna T. Hardin, wife of R. Y. Hardin, and Clifton Arterburn, to be divided among them equally, share and share alike, but upon the conditions, restrictions and limitations hereinafter set out.

".6.  I have advanced to my daughter, Ophelia Hardin, wife of A. W. Hardin, the sum of $5,000, which sum I direct my executors to charge her with in making a division of my estate, but without interest.  And in dividing my land, I direct my executors to allot to my said daughter, Ophelia, the farm in Oldham county upon which she resides, being the same land conveyed to me by said A. W. Hardin and his wife, Ophelia, and to charge the same to her at the sum of $14,000.  I hereby authorize and direct my executors hereinafter named to convey said land, or any other land to which she may be entitled, to my daughter, Ophelia, during her life with remainder to her children.

"Should the distributive share of my said daughter amount to as much as the value of said farm, together with the advancements, then the deficiency shall be a lien upon her interest.

"7.  I have heretofore advanced to my daughter, Mary Emma Hoskins, wife of Robert H. Hoskins, the sum of $5,000, which I direct my executors to charge her with in making a division of my estate.  And I have heretofore advanced to my daughter, Bettie Shanks, wife of John Shanks, the sum of $2,000, which I direct my executors to charge her with in making the division of my estate.  And I have advanced to my daughter, Anna T. Hardin, wife of R. Y. Hardin, the sum of $500, which I direct to be charged

to her, but .I exempt all my children from the payment of any interest on advances made to them.

"8. The house in which I live is situated on a tract of land devised to my wife with remainder to our children. I have bought the adjoining land so as to make a valuable tract if taken together, but if taken separately the value of each piece is much lessened. I have taken deeds from my three oldest children for their share of said land after their mother's death, and it is my wish that the home place shall be allotted to my son, Clifton. To this end, I request my children to co-operate with my executors and my wife, should she survive me, and make such a division of my estate as· to carry out this request, and to treat their mother's land as a part of my estate, which will enable them to execute my wish without trouble.

"9. I hereby invest my executors hereinafter named with full title to all my lands and authorize them to sell any part or portion thereof, and to convey the same, if in their judgment it is necessary or expedient to sell any portion thereof for the purpose of raising money to satisfy the provisions hereinbefore made for my wife or · my son, Edward, or for the purpose of thereby making better division of my estate. And I authorize and direct my executors to make a division of my estate as herein provided, and in conveying to my daughters their share or portion of my lands I direct my executors to convey to said daughters respectively, for their sole and separate use during their lives, and at their deaths to their child or children. Should a greater sum than $1,000 in money be allotted to either of my daughters, I direct my executors to hold the same in some security deemed good and safe by my said executors, and to pay over the income from such investment to my said daughter; or, upon the request of said daughter, the same may be invested in land or a house and lot, the same to be conveyed to said daughter as hereinbefore stipulated.

"10. In making this last will I have desired to provide first for my wife and afflicted child and then to divide the residue of my estate equally among my other children, and whatever I am able to leave them is the result of a laborious and economical life. Should any one or more of my children seek by legal means to set aside any charges I have herein made against him or her, or to set aside this will, then I direct my executors to withhold from said

child or children any part or portion of my estate which would otherwise go to her or him so contesting, and I hereby deprive such child or children of any part of my estate.

"11. I hereby nominate and appoint my brothers, W. C. Arterburn and Covington Arterburn, executors of this my last will and testament, and request that no bond be required of them by the judge of the county court, either as executors or under any trust herein created, and should either one of them decline or fail to qualify, then all the powers, rights and duties herein enumerated are given to the one who does qualify, whose acts shall be as binding as if both had qualified.

"12. I direct that no division be made among my five children as provided in the fifth clause until my son, Clifton, arrives at the age of twenty-one years, except this: I authorize my executors to set apart to my two daughters, Bettie Shanks and Mary Emma Hoskins, each a lot of land off the tract adjoining the new waterworks of not exceeding ten acres to each of them, suitable for a building or residence purposes, which are to be valued by my executors and charged to such daughter; and in valuing the place on which I live, I desire that the improvements be valued only at a small nominal sum, if at all.

"13. I give to my grandson, Norbourn Richards, son of my daughter, Bettie, my gold watch, and the Mike colt, and my executors are directed to buy for said grandson a saddle and bridle.

"In testimony whereof, I have hereunto set my hand this 22d day of March, 1878.                    Norbourn Arterburn."

The testator, after making certain specific devises by the 5th clause of his will, says: "All the rest and residue of my estate, real, personal and mixed, I devise and bequeath to my five children, namely, Ophelia Hardin, * * * Bettie Shanks, * * * Mary Emma Hoskins, * * * Anna T. Hardin, * * * and Clifton Arterburn, to be divided among them equally, share and share alike, but upon the conditions, restrictions and limitations hereinafter set out."

By the 9th clause of his will he invests his executors with full title to all of his lands and authorizes his executors to make a division of his estate as provided by his will: "and in conveying to my daughters their share or portion of my lands I direct my executors to convey to said daughters respectively, for their sole and separate use during their lives, and at their deaths to their child or children."

By the 12th clause of his will the division was not to be made until his son, Clifton, arrive at the age of twenty-one years. Clifton attained his majority in August, 1880, and soon thereafter the executors divided the lands into five portions, but Anna T. Hardin, one of the children, dying after the testator without leaving a child or children, the executors declined to convey her portion to the other children but left the mode of partitioning her interest to be determined by the chancellor. The question presented is, How is Anna T. Hardin's interest to be divided? The appellants insist that the devise to the executors of the land owned by the testator with the direction to convey the interests of the daughters for their sole and separate use during their lives, and at their death to their child or children gave to the daughters an estate for life, remainder to their children, and as Anna T. Hardin died without children, and no disposition having been made by the testator, upon such a contingency of the remainder interest, it (the remainder) must be regarded as undivided estate, falling by descent to the children and grandchildren of the testator; and that in partitioning the interest of Anna T. Hardin between the survivors, they must account for advancements received from the testator in his lifetime so as to equalize those in interest regardless of the charges made by the testator in his will as to the amount of advances made.

The appellees, Clifton Arterburn and others, maintain that each one of the daughters was vested with a fee subject to be divested in the event they had children. In other words, the contingency upon which they were to be deprived of their absolute estate was their dying leaving children surviving them. There can be no doubt but under the 5th clause of the will the entire estate was vested in the children of the testator, "but upon the conditions, restrictions and limitations hereinafter set out." It then becomes necessary to examine the subsequent provisions of the testator's will with a view of ascertaining the conditions, limitations and restrictions placed upon the devise made by the 5th clause.

All the testator's estate passed by the 5th clause absolute to the children except the specific devises already made, but upon the conditions and restrictions annexed. The testator had five children, one son and four daughters. By the 9th clause of his will he invested his executors with a full and perfect title to all his lands with the direction that a division be made as provided by his will,

with the further direction that "in conveying to my daughters their share or portion of my lands I direct my executors to convey to said daughters respectively, for their *sole* and *separate* use during their lives, and at their deaths to their child or children."

There was no contingency annexed to the power conferred upon the executors. Their plain duty was to execute a conveyance to the daughter for life, remainder to her child or children, and this was one of the restrictions and limitations of the daughter's interests referred to in the fifth clause of the will. The entire estate of the testator was passed by the devise, but the absolute title was in his executors to all his lands, with the direction to make a distinction between the son and his daughters as to the manner of their holding. The son was to be invested by the executors with the fee and the daughters with a life-estate, remainder to their children.

In the construction of a will the intention of the testator when ascertained should control the same. Regarding this as the governing principle, it is manifest that it was the purpose on the part of the testator to give his daughters a less estate in his lands than that devised to his son. A devise to one for life, remainder to his children, evidences a purpose on the part of the testator or grantor to dispose of his whole estate; but the fact that the life tenant dies without issue will not vest him with a fee, for if such be the rule adopted it would not only be insufficient in many instances to create a life estate but would often result in defeating the plain intention of the testator.

The objection to the position assumed by counsel for the appellees in this case, or rather by counsel for Mrs. Arterburn, on her appeal, who claims to be one of the heirs of her daughter, is that there is no devise in this case to Mrs. Hardin of the absolute estate to be divested on the contingency that she has children surviving her. There is no devise in fee in the present case to the daughters by the fifth clause of the will. The estate is given upon the conditions, restrictions and limitations hereinafter expressed. These must be looked to in order to ascertain the character of donation of the estate devised.

Suppose the son had arrived at majority before the death of Mrs. Hardin and the executors had conveyed the estate to her for life, remainder to children, and she had died childless, would there be any doubt as to the donation of the estate, or would the chancellor

by construction have to determine that she held the fee because there was no child surviving to take the remainder? The general rule that when the devise over passes the estate it remains in the former taker, can only be recognized where the language of the first devise is sufficient to carry the whole estate to the first taker, and where there is nothing in the devise showing a contrary intention. Redfield on Wills (3d ed.) 265, sec. 9.

Here there is no absolute devise to the daughters with the provision that the estate is to go to the children, if they have any. It is a plain life estate, and if the deed had been made by the testator in his lifetime, as he has directed his executors to make it, there could be no room for construction. They were empowered by the will to execute the conveyances to the children in a particular way and in no other, that it is to the daughter for life and then to her children. Besides, any other construction would give to Mrs. Hardin the fee while her other sisters would have only a life estate. The testator no doubt contemplated that all of his daughters would have children, and therefore the failure to provide for the contingency of their not having children. While the testator believed he had disposed of his entire estate, he also knew that he had created a life estate only in his daughters. Authorities have been adduced by counsel conducing to sustain their construction of this will, but upon a careful consideration of the instrument we can not conclude that the testator intended to give a greater estate to his daughters than for life, and this was the limitation placed upon the devise by the fifth clause of the will.

It is insisted by the counsel for the children of Mrs. Hoskins that as to the undevised estate (which is the remainder after the death of Mrs. Hardin in that portion devised to her in its division) the question as to advancements made by the devisor is to be considered in order to equalize the children or those entitled to the inheritance. These appellants propose to establish that the amount of advancements charged by the devisor against their mother has never been received. In *Bowles v. Winchester*, 13 Bush (Ky.) 1, this court in passing upon the statute regulating advancements in case of total or partial intestacy adjudged that the intention of the testator is not to be consulted, the cardinal object of the statute being to make those entitled equal in the distribution of the estate. By the tenth clause of the will it is said by the testator that what

property he had to devise was the result of a laborious and economical life. "Should any one or more of my children seek by legal means to set aside any charge I have herein made against him or her, or to set aside this will, then I direct my executors to withhold from said child or children any part or portion of my estate which would otherwise go to her or him so contesting, and I thereby deprive such child or children of any part of my estate."

By certain provisions of the testator's will, his wife was requested to relinquish certain portions of her own estate in order that the testator's will might be carried into effect, and the estate divided in accordance with his wishes. The improvements on the home place given to his son, Clifton, were to be placed at a nominal value. The entire estate had passed by his will to his children for life, except to the son, who was entitled to the fee.

All the daughters had children at the date of the will except Mrs. Hardin, and she having no children at her death to take the remainder, that interest passed to the heirs at law. The life tenants were the parties charged with these advancements. A settlement and division of the estate was had and the advancements charged to the parties (Mrs. Hoskins), whose children are now claiming that under the statute the entire settlement should be disregarded and an account taken of the advancements made. It must be conceded that as to the undevised estate under the statute, the intention of the testator or the statement made by him in his will as to the character and value of advancements made will not preclude those taking the undevised estate by descent from showing that the advancements were in fact made. The devisee is not to be regarded as claiming in such a case under and against the will. The right to this equality is controlled by the statute as to undevised estate, and those who have received less must be made equal with those receiving a greater portion to the extent that the undevised estate will produce equality.

Giving to the statute its full force and recognizing the rule settled in the case cited, some consideration is to be given to the tenth clause of the will, inserted for the purpose of having testator's estate divided as therein directed. The widow or wife surrendered her own land as a part of her husband's estate that the provisions of the will might be carried out and valuations fixed upon the realty as directed by the executors, and a distribution and division

had between the surviving devisees, through the executors, by which they are charged with the advancements. Under a will providing a penalty if any effort is made to set aside the will as to the charges made against the children, this penalty as to the one making it is the perfection of his intent. Having accepted the testator's bounty in such a case and upon such a condition, the entire estate being devised to those accepting it for life, with the surrender of the rights of others to their own property that it might become a part of testator's estate in order to carry out the will, neither the life tenant nor those in remainder will be allowed now to say that the advancements charged against the life tenants were improper or had never been received.

As to the claim of the widow of the devisor to dower in the lands of her husband, this court in the case of her appeal against W. C. Arterburn and others has in effect decided that she is not entitled to it. In that case she asked to be permitted to renounce the provisions of her husband's will that she might have her distributive share of the personalty, or at least the value of her own estate that she had conveyed for the purpose of carrying into effect the will of her husband. In that case this court said:

"Her determination to abide by the will (having failed to renounce its provisions within the time provided by the statute) is clearly established, and the fair inference from the entire testimony is that there was a mutual understanding between herself and her husband as to the manner in which the estate, including the land of the wife, should be disposed of. We think it manifest that the devise to the widow was in lieu of dower. She was amply provided for, although not receiving as much as she would have been entitled to by renouncing the provisions of the will for her benefit." Arterburn v. Arterburn, 6 Ky. L. 740.

She was not only satisfied with what she had received but was surrendering a part of her own estate to her children; and while the will does not specify that the devise to the wife is in lieu of dower, the intention to do so is plainly inferred from the instrument itself, and any other construction would be inconsistent with its provisions, and certainly inconsistent with the action of the widow.

The judgment below is affirmed on the appeal of Ann Arterburn and on the appeal of Hoskins v. Arterburn.

Judgment affirmed.

*Elliott & Hemingray, Muir & Heyman, for Hoskins.*
*Russell & Helm, Goodloe & Roberts A. P. Humphrey, H. R.*
*Phillips, W. O. & J. L. Dodd, for Arterburn.*