## McCray, et al. v. Corn, et al.

(Decided February 15, 1916.)

### Appeal from Mercer Circuit Court.

1. Descent and Distribution—Advancements.—Under section 1407 of the Statutes, property or money given or devised by a parent or grandparent to a descendant shall be charged in the distribution of the undevised estate as an advancement, to be estimated according to the value of the property when given.

2. Descent and Distribution—Advancements—Consideration Recited in Deed Not Conclusive—Burden of Proof.—When a parent conveys land to a child for a recited consideration and the conveyance is sought to be charged as an advancement, it is not necessary that the petition or the evidence should show either fraud or mistake in the recitals of the consideration, but the burden of proof is on the heir asking that the property conveyed be charged as an advancement to show that it was in fact an advancement and not made for a valuable consideration.

3. Descent and Distribution—Advancements—Declarations of Parent or Grandparent Not Conclusive.—A parent or grandparent cannot by a mere declaration of his intention, either verbally or in writing, make that an advancement which is not such by law. Declarations of the parent or grandparent before the property was given are competent to show the intention of the parent or grandparent.

4. Descent and Distribution—Advancements—Rent May be Charged as.—A child who has the use of land may be charged with the value of this use as an advancement.

5. Descent and Distribution—Settlement of Estate—Attorney Fees.— Where a suit is brought to settle an estate, the attorney for the plaintiff is entitled to a reasonable attorney fee, but when the suit is really for the benefit of the plaintiff in an effort to charge the defendants, who are represented by attorneys, with advancements, the plaintiff's attorney should not be allowed an attorney's fee except for such services as were actually rendered in the settlement of the estate.

E. H. GAITHER, R. L. BLACK and J. F. VANARSDALL for appellants.

C. E. RANKIN and R. W. KEENON for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming on original and cross-appeals.

Isaac McCray died in 1894, leaving a will that devised his property to his widow, Catherine McCray. He left surviving him three children, the appellants, J. W. and Isaac McCray, and the appellee, Mattie McCray, who married Corn. At the time of the death of Isaac McCray, Mattie was about 24 years old, J. W. about 21 and Isaac 19. All of these children lived with their mother until March, 1903, when Mattie married and left home, and after her marriage the two boys, neither of whom had married, and the mother lived together until her death in 1913.

Isaac McCray at his death left a farm containing about 153 acres, and about nine hundred dollars in money and personal property after the payment of his debts.

This farm was sold by the widow in September, 1900, for $4,590.00. In May, 1896, she purchased a small tract of land for $386.00, and in 1897 sold it to Samuel Corn for $750.00. In February, 1897, she purchased another tract of land for $1,900.00 and sold this in February, 1900, for $2,786.00.

In October, 1900, she bought a body of land containing 207 acres for $9,348.00, one-third of which was paid in cash, and for the balance two notes were executed, which were paid on or before November, 1902. In November, 1903, for the recited consideration of $4,568.00, she conveyed 101 acres of this 207-acre tract to her two sons, retaining the remainder, which she died the owner of.

After the death of the mother, and in February, 1914, Mattie Corn brought this suit against her brothers for the purpose of settling the estate of her mother, who died intestate, leaving very little if any personal estate and owing no debts except perhaps a few trifling ones, and to charge her brothers with advancements amounting to about $17,000.00. It was averred that the 101-acre tract of land conveyed to them by their mother was an advancement to them, and that after the death of her husband she had given to them property as well as rents and profits amounting to several thousand dollars.

For answer to this suit the brothers, after denying the averments of the petition, set up that they had paid the consideration recited in the deed from their mother in improvements put on land owned by her and in services rendered to her, including expenses incurred for her benefit, an aggregated sum amounting to much more than the recited consideration in the deed. They further set up a claim against their mother's estate for an amount composed of various items of service and attention after 1903 aggregating a sum equal to the value of the 106 acres owned by their mother at her death.

After the pleadings had been made up, the case was referred to the master commissioner of the court to ascertain and report the amount of advancements made to the children by their mother and the amount of rent with which the boys were chargeable. The commissioner's report showed that Mattie had never received anything from the estate of her mother or father except some personalty worth not less than fifty nor more than one hundred and fifty dollars; and we might here add that the evidence shows that seventy-five dollars would

be a fair valuation of everything that she received from both. The report further showed that the two boys, in addition to the 101 acres conveyed to them by their mother, had accumulated a considerable estate.

The court, upon exceptions to the report of the commissioner, adjudged that Mattie was entitled to $1,500.00 more out of the estate left by her mother than her brothers, or, in other words, charged them jointly with $1,500.00 as advancements. The 106 acres, the title to which was in the mother when she died, was ordered to be sold and the proceeds equally divided between the three children, except that out of the proceeds Mattie was to get $1,500.00 more than her two brothers jointly. It may here be observed that the 106 acres was sold under the judgment of the court for one hundred dollars an acre.

To so much of the judgment as gave Mattie $1,500.00 out of the shares of her brothers, the brothers prosecute this appeal, and she prosecutes a cross-appeal complaining that the court should have allowed her an attorney's fee of at least three hundred dollars, and charged the brothers with several thousand dollars as advancements in place of fifteen hundred.

The evidence shows that the mother and the three children were industrious, saving, thrifty people. Mattie and her mother stayed at home and worked and saved about the house until her marriage in March, 1903, at which time she was about 33 years old, and the boys worked and saved about the farm. Of course a large part of the money made while they all lived together was the result of the labor and good business qualities of the boys, but Mattie did her part by faithful service at home. Her father had given her an old organ, and when she left home in March, 1903, upon her marriage with Corn, she took with her, or rather there was sent to her, about fifty dollars' worth of odds and ends gathered about the place, and nothing was given to her afterwards. At this time it will be noticed that her mother had the title to 207 acres of land, the purchase price of which, amounting to $9,348.00, had been paid in full, and that six months after she left, her mother, for the recited consideration of $4,568.00 paid in labor and service, deeded to the boys 101 acres of this land. It might therefore be said that while Mattie for her services got fifty dollars from her mother, the boys for their services

got land valued in the deed at $4,568.00. In attempting to explain this discrimination against Mattie, the argument is made for the boys that this land was not given to them as an advancement, but for a valuable consideration paid by them in services to their mother in labor and improvements and the like. And the principal question in this case is, was this 101 acres an advancement to them, or did they, in fact, pay the valuable consideration recited in the deed?

It is provided in section 1407, of the Kentucky Statutes, that "Any real or personal property or money, given or devised by a parent or grandparent to a descendant, shall be charged to the descendant or those claiming through him in the division and distribution of the undevised estate of the parent or grandparent; and such party shall receive nothing further therefrom until the other descendants are made proportionately equal with him, according to his descendible and distributable share of the whole estate, real and personal, devised and undevised. The advancement shall be estimated according to the value of the property when given. The maintaining or educating, or the giving of money to a child or grandchild, without any view to a portion or settlement in life, shall not be deemed an advancement."

Counsel for appellants concede that if the 101 acres deeded to the boys by their mother was an advancement within the meaning of this statute, they should be charged with the value of the property at the time the deed was made. But they insist that this conveyance was made for a valuable consideration; or, in other words, for the consideration expressed in the deed, and therefore the advancement statute has no application to this transaction.

It is further urged that, as the recital in the deed setting out the consideration, was not attacked in the petition on the ground of fraud or mistake, this recital is conclusive evidence of the fact that the consideration was in truth the sum named.

We do not think, however, that it is necessary in cases like this that the petition should charge that the recited consideration was inserted in the deed by either fraud or mistake. The statute provides that any property given by a parent to a child shall be charged as an advancement, and no matter what the recited consideration in the conveyance sought to be charged as an advance-

ment may be, this recital is not conclusive; nor is it essential that it should be averred or shown that it was made either by fraud or mistake, but when the instrument recites the consideration and it is sought to charge the property conveyed as an advancement, the burden of proof is on the person asking that it be charged as an advancement to show that it was, in fact, an advancement and not made for a valuable consideration.

The principle announced in Anheier v. Delong, 164 Ky., 694, is, we think, controlling here. In that case the effort was made to show that a deed which recited a valuable consideration was, in truth, a conveyance in consideration of marriage, and the point was made that as there was no averment in the petition of fraud or mistake in the terms or conditions of the deed, the recited consideration was conclusive. But we said:

"But this rule has no application to a case like this, as the rights of the parties to the restoration of the property are determined by the provisions of the Code, and if it appears that the property sought to be recovered was received by the other party 'directly or indirectly, from or through the other, during marriage, in consideration or by reason thereof,' the party so receiving the property must restore it. The recitations of the deed are not controlling, although if the deed should recite a consideration of value, the burden of showing the true consideration would be of course upon the party seeking the restoration.

"The only question to be determined in this class of cases is, was the property received, directly or indirectly, from or through the other, during marriage, and in consideration or by reason thereof, and this is necessarily a question of fact to be determined as any other question of fact. If the deed recites a valuable consideration or other consideration than one arising directly or indirectly out of the marriage relation, it may be shown that the recited consideration was not in fact the real or true consideration, and that there was no valuable consideration or other consideration than the one arising out of the marriage relation."

In addition to this it has been written in several cases that the parent "cannot, by a mere declaration of his intention, either make that an advancement which is not such by law, or exempt one of his children from liability to account for money or property he has given to him,

with which the statute makes him chargeable.'' Clarke
v. Clarke, 17 B. Mon., 698; Cleaver v. Kirk's Heirs, 3
Met., 270; Shawhan v. Shawhan's Admr., 10 Bush, 600.

Now if the appellant cannot by verbal declaration
prevent that from being an advancement which the stat-
ute provides shall be one, we think it necessarily follows
that he cannot do it by a written declaration or by a
writing of any kind. So that whatever the intention of
the parent may be in giving property to his children,
and whether this intention is manifested by words or in
writing, the statute and not the intention, however ex-
pressed, will control. As said in Clarke v. Clarke, *supra*:
''The object of the statute seems to be to produce per-
fect equality in distributing the estate of a decedent, not
disposed of by will, among the persons entitled thereto.
This object might be, in a great degree, frustrated by
allowing the intention of the giver to intervene, and have
the effect of avoiding the express and imperative requisi-
tions of the statute;'' and this construction of the statute
has been consistently adhered to.

The case of Gordan's Heirs v. Gordan, 1 Met., 285,
is also conclusive of the question that the recital in a
deed by a parent to his child, that the land was conveyed
for a valuable consideration, stating it, does not prevent
the other heirs from showing that it was, in fact, an
advancement. To the same effect is Crafton v. Inge, 124
Ky., 89.

The question, therefore, recurs, was this conveyance
made for a valuable consideration or was it a gift in the
meaning of the statute, to be charged as an advance-
ment? And Mrs. Corn having the burden of proof on
this issue, does the evidence show that it was, in fact,
a gift?

It seems to be conceded that no money consideration
was paid by the boys for this land, but there is evidence
that Mrs. McCray said at the time, and before the deed
was made, that she intended to convey the boys this land
in consideration of the labor and services they had ren-
dered to her. And this evidence was competent. Hill v.
Hill, 122 Ky., 681. And it is not to be disputed that
these boys did render much and valuable service in the
care of the estate left by their father and in the accumu-
lation of the increase in its extent as well as its value.
They were capable business men, good farmers, and to
their energy, industry and skill there may be attributed.

the acquisition of a large part of the estate owned by their mother at the time this conveyance was made in 1903. But while this is so, it should not be forgotten that during the years that their efforts were largely contributing to the building up of this estate, Mattie was also, in her narrow environment and according to her strength and opportunity working as faithfully and saving as economically as her brothers. For their labor and skill their mother gave them land worth easily $4,568.00, if not more, and to Mattie, for her years of attention and labor, she gave personal property not exceeding in value $50.00.

It should also be kept in mind that the boys at all times, from the death of their father, had the use and control of the farm and its increase and profits. They started with the land left by him when he died, and using this land as a base of operations, they were enabled out of the increase and profits from it, as well as from other land purchased with the profits made on this, to increase the value of the estate of their mother and at the same time build up their own estate.

It may be true that the services of these boys during the ten years between the death of their father and the conveyance of this land to them were worth the recited consideration in the deed. But under the circumstances of this case this is not the way the transaction should be looked at. During these years they were working for themselves as well as their mother. They derived and had reasonable expectation of deriving much larger benefits from their labor and services than their mother did, and it might be said that the increase in the estate and the ability to buy this 207 acres of land was the result of the combined efforts of the capital of the mother and the labor of the boys. We are, therefore, of the opinion that they should be charged with the value of this land as an advancement at the time the conveyance was made.

Counsel in their brief say that this land at the time it was deeded to the boys was worth $75.00 an acre, but the record does not show that it was worth this much. But that it was worth fully the amount recited in the consideration, is, we think, very clearly established; and so the lower court correctly adjudged that Mattie should have one-third of this amount.

It is further urged in her behalf that the boys should be charged with the reasonable rent of the 106 acres retained by their mother from 1903 until the death of their mother in 1913, and also with the rent of the other land owned by her and used by them before this 207 acres was purchased. But under the circumstances of the case we do not find ourselves able to agree with this view. It is true the evidence shows very clearly that the boys not only had the use of this 106 acres from 1903 until the death of their mother, but also the use of all the land owned by her from the time her husband died. But while this is so, they were continually improving and building this land up and by their labor and skill as farmers increasing its value, and Mrs. Corn reaped, in a substantial way, the benefit of this increase in value because she got one-third of the proceeds realized from the sale of the 106 acres, and the 207 acres of which it was a part was paid for out of the proceeds of the other land and the income and profits thereof which had been largely created by the efforts of the boys.

We do not, however, wish to be understood as holding that rents cannot be charged as an advancement; for it has often been written by this court that a child who has the use of land may be charged with the value of this use as an advancement. Thus in the case of Wakefield v. Gilleland's Admr., 13 Ky. L. R., 845, 18 S. W., 769, Judge Pryor, speaking for the court, said:

"We think it well settled in this State in Shawhan v. Shawhan, 10 Bush, 600, and in other cases, that the value of the use and occupation of land by one child under no contract of renting, although holding at the will and pleasure of the father, must be accounted for by the child as an advancement in the settlement and distribution of the father's estate, and also settled that, if there is a consideration to be paid for the use that is merely nominal and inadequate to such an extent as to show injustice and inequality in the distribution, the chancellor will disregard such a consideration, and require the child receiving the use of the property to account for its reasonable value."

Other cases holding that rents may be charged as advancements are Ford v. Thompson, 1 Met., 580; Hamilton v. Moore, 24 Ky. L. R., 982; Garrott v. Rives, 26 Ky. L. R., 10; Bowles v. Winchester, 13 Bush, 1.

The boys asserted, as stated, a large counter-claim for services and attention given to their mother during the last few years of her life, which was, they say, quite a charge on them; but we do not find any merit in this claim. She had labored many years continuously and faithfully for them, and it was no less than their duty to take care of her when age and infirmities made her a burden in place of a benefit to them.

The court refused to allow the attorneys for Mattie the attorney fee, or any part of it, which they claimed on the ground that they were entitled to an attorney fee to be paid out of the estate, as the suit was brought for a settlement of the estate of Mrs. McCray. In one sense the suit was brought to settle her estate, but in a larger sense it was brought for the purpose of charging the boys with advancements received from her. Mrs. McCray really had no estate to settle. She left neither personal estate of substantial value nor debts. All that she had was the 106 acres of land. There was at no time any question made as to Mattie's right to one-third of this land or of its proceeds. The entire contest grew out of the effort to charge the boys with advancements, and although the attorneys of Mattie might be entitled to a nominal attorney fee for bringing a suit to have the land sold and the proceeds divided, we do not under the circumstances of this case think the disallowance of the fee to which they were entitled for this service of sufficient moment to justify a reversal of the case. Wakefield v. Gilleland, 118 S. W., 768, 13 Ky. Law Rep., 845.

We have carefully considered this entire record and have reached the conclusion that the judgment appealed from is, under all the facts and circumstances, equitable and just, and it is affirmed on the original and cross-appeals.