## William S. Isgrigg, et al. v. Daniel Isgrigg as Administrator of William Isgrigg, Deceased, et al.

(Decided February 12, 1918.)

### Appeal from Bourbon Circuit Court.

1. Descent and Distribution—Advancements—Parol Gift.—Where a father gave by parol to his daughter a tract of land, and put her in possession thereof, upon a settlement of his estate after his death intestate, the daughter will not be charged with the use and occupation of the lands as an advancement, the other heirs refusing to execute the gift, since it was not the intention of the father to give to his daughter the use and occupation of the land, but to give her the land itself, and to require her to account for the use and occupation as an advancement would in effect make a different arrangement, and one to which she never tacitly or expressly agreed.

2. Descent and Distribution—Advancements.—A descendant may be charged with rent or use and occupation as an advancement, but to do so it must appear that the rent or the use and occupation was the thing intended to be given by the ancestor.

3. Descent and Distribution—Parol Gift.—It is competent to prove a parol gift of land for the purpose of showing the intention of the giver in making it; such proof, however, not being competent for the purpose of enforcing a specific performance.

4. Descent and Distribution—Advancements.—Although it is incompetent to prove that the intestate did not intend his gift as an advancement, yet it is competent to show the thing intended to be given.

EMMETT M. DIXON for appellants.

TALBOTT & WHITNEY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

William Isgrigg died intestate a resident of Bourbon county, Kentucky. He left surviving him his widow, who was his second wife and the mother of appellant, and two children, the appellant, William Sweeney Isgrigg, and the appellee, Mrs. Emma Isgrigg Jacoby. Daniel Isgrigg, who is not an heir, qualified as administrator, and he as such personal representative, with Mrs. Jacoby and her husband, filed this suit against the appellant and the widow for a settlement of the estate and a division thereof among the heirs.

The answer raised the only question involved on this appeal, which was that Mrs. Jacoby should be charged with advancements for use and occupation of a one-half undivided interest in a tract of land in the county of decedent's residence, consisting of 197 acres, which it is alleged she had used by occupying it with her husband since about the year 1891. In addition to the undivided interest in that tract the decedent owned at his home place some short distance away about 200 acres of land upon which the appellant, William Sweeney Isgrigg, resided with his father until his marraige and continued to occupy the land after that time, living in a separate house from his father. It is alleged that the use and occupation of the land by the daughter from the time she and her husband began to occupy it was reasonably worth something over $10,000.00.

In avoidance of the attempt to charge her with this item as an advancement, appellee pleaded that the land at the time she began her occupation was orally given to her by her father who at the time intended to make a gift of it to her, but that he died without executing any writing to that effect, either by way of deed or will; that he did not intend to give her the *use and occupation* of the land only, but the land itself, and that at the time it was of the reasonable value of the price paid, $5,400.00, and that she was willing to take the land and be charged with that sum. Her brother, the appellant, declined to do this, but insisted that she be charged with the rents and that the land be divided between them. The trial court, after hearing the evidence, upheld the daughter's contention in so far as she sought to be relieved of the charge for advancements growing out of the use and occupation of the land, but ordered the land which she had occupied divided as a part of the estate of the intestate. Complaining of that judgment, the son prosecutes this appeal.

Section 1407 of the Kentucky statutes is in these words: "Any real or personal property or money, given or devised by a parent or grandparent to a descendant, shall be charged to the descendant or those claiming through him in the division and distribution of the undevised estate of the parent or grandparent; and such party shall receive nothing further therefrom until the other descendants are made proportionately equal with him, according to his descendible and distributable share of the whole estate, real and personal, devised and undevised. The advancement shall be estimated according to the value of the property when given. The maintaining or educating, or the giving of money to a child or grandchild, without any view to a portion or settlement. in life, shall not be deemed an advancement."

In construing that section this court has uniformly held that wheresoever there was a gift by the ancestor to a descendant, the intention of the former that the gift should or should not be an advancement can not be permitted to prevail against the manifest effect of the transaction, for if it was a gift the donee would be charged with the gift as an advancement, notwithstanding it might be clearly shown that the donor did not intend such a result. Bowles v. Winchester, 13 Bush 19; Bailey's Admr. v. Barclay, 109 Ky. 640; Sullivan v. Sullivan, 122 Ky. 712; Crane v. Malone, 130 Ky. 128; Ford v. Thompson, 1 Met. 584; Clark v. Clark, 17 B. M. 706; Shawhan v. Shawhan's Admr., 10 Bush 600, and McCray v. Corn, 168 Ky. 457.

It is also the rule, as expressed in the statute, that the value of the property advanced must be fixed as of the day it was made. These rules seem, as indeed they must be, conceded by both sides. It is likewise equally well settled, as will be seen from the cases, *supra*, that rent or use and occupation of property is a proper subject matter of advancement, and if it was the intention of the intestate to confer upon the donee the use of the property, which was accepted by the latter and appropriated by him, he should be made to account, upon a final settlement of the ancestor's estate, for the value of such use and occupation, to be fixed, of course, as of the day they were enjoyed. But that concededly established rule does not quite meet the facts of this case, provided the decedent here intended to give only the *land* in question to his daughter at the time he acquired it and she moved

upon it. The facts upon that point, as appear from the record, are substantially these: Prior to 1891 the husband of the daughter, and his brother owned jointly the tract of land of 197 acres. About that time, or perhaps shortly prior thereto, the daughter married the appellee, Lyle Jacoby, and the intestate purchased from his (the husband's) brother the latter's undivided one-half interest in that tract, taking the deed to himself, and the daughter and her husband, who perhaps were living upon his one-half of the tract at the time, took charge of the entire tract and occupied it from that time until the decedent's death, claiming it as their own and using and managing it as an owner ordinarily uses and manages his own property. For awhile the husband listed the entire tract in his own name and paid taxes thereon, but afterwards he deeded. to his wife his portion of the tract, and from that time it was listed in the name of and the taxes were paid by Mrs. Jacoby. There is no proof that a dollar was ever spent on the property by the decedent from the time he obtained his deed; or, if so, it was a very trifling sum. The daughter and her husband kept the premises in repair and made what improvements were put thereon. At one time they concluded to sell the entire tract, and actually put it up at auction, but it not bringing what was regarded as a sufficient sum, the sale was not consummated. The decedent attended that sale, and at least appeared to acquiesce in it, making no objections thereto. He told a number of people about the time of his acquiring the property that he did so for the purpose of giving it to his daughter, and he told her as much. Similar statements were made by him at various periods succeeding the purchase.

It was shown for appellant by a number of witnesses, perhaps greater in numerical strength, that decedent on a number of occasions stated in their presence that he had not given the land to his daughter, but was only permitting her to live upon it. It is extremely doubtful whether this testimony was competent upon the issue involved of a gift or no gift, being self-serving in its nature. But waiving that question, under the rule of practice prevailing in this court, we are not inclined to disturb the chancellor's finding upon that issue, which is supported not only by the testimony referred to given by the witnesses introduced by the daughter, but also by other facts and circumstances developed by the record, to some of which we have already alluded.

Another circumstance fortifying the daughter's contention is that the decedent was apprehensive that the land in question might in some way be appropriated for the debts of his son-in-law, and this might have furnished a possible reason why he did not have the deed executed to his daughter. But, whatever the reason, we find in the record ample and sufficient testimony to authorize the trial court in holding that the intestate made the purchase for the use and benefit of his daughter, and intended at the time to make her a gift of the land. It is insisted, however, that the statements proven by him to that effect were incompetent, since the intention of the donor in making a gift may not, as we have seen, affect the question of advancements, and some of the cases, *supra*, together with others, are referred to in support of this contention. But counsel misapprehend the rule of those cases and the office of such testimony in this case. If the testimony had been directed to the issue of the intention of the decedent to *make an advancement* to his daughter, his position would be unassailable; but it was intended to fill an entirely different office, which was to show not the purpose of the gift or the intention with which it was made, but whether there was an *intention to make a gift,* and if so of what property.

In cases where a right is sought to be built upon a parol gift of real property, although it may not be effectual to pass the title, it is competent to prove facts including statements of the giver to establish the true nature of the transaction. This is universally recognized in cases where an adverse holding is claimed dating from an oral gift, and it has never been denied but that the intention to give could be proven by oral testimony. Tippenhauer v. Tippenhauer, 158 Ky. 639. This being true, and having adopted the chancellor's finding upon the fact of a gift of the land in question by the intestate to his daughter, it becomes necessary to determine what, under the law, are the rights of the parties.

Necessary to a transaction which is sought to be characterized as an advancement, there must be two parties— the donor and the donee. It is well stated in I. R. C. L., page 658, thus: "The donee in an advancement must be a party thereto, and can not be charged with a gift from the donor as an advancement unless he acquiesced in the arrangement and accepted the *gift as an advancement.* If the rule were otherwise a child might be forced into

taking property that he did not want or might not be able to use to advantage." So that there must not only be an intention to give specific property, but also an intention to accept and appropriate the same specific property. In the instant case, as we have seen, the thing intended to be given by the ancestor and to be accepted by the child was *the land,* and not the *use and occupation* of the land. For aught that appears the daughter might not have been willing to accept only the use and occupation and afterwards, and perhaps years in the future, be charged with its full value, which may have been worth largely more than she could possibly realize therefrom, and thereby be forced to account for that to which she never in any manner agreed. At the same time she may have been perfectly willing to take the land and be charged with its value at the time in a settlement of the donor's estate. The question is not a new one to this court, since it was squarely presented in the case of Montjoy v. Maginnis, 2 Duvall 186. This court in that case, in disposing of the question, said:

"Edward Montjoy, in his lifetime, made a parol gift of a tract of land to each of his two sons, William and Edmund. He having died intestate, his heirs at law refused to execute the gift, and insist that William and Edmund should be charged reasonable rents for their respective tracts.

"It is evident that this case does not fall within the provisions of chapter 30, section 17, I. Stanton's Revised Statutes, 426, because it was not the rents that were given, but the land itself; the use whereof was merely incidental to the gift. As the heirs refused to execute the gift, as made by their ancestor, they have no right to change it into a gift of another character, nor to make a new gift for the decedent, not contemplated by any of the parties; and to do so would be clearly unjust. They can either execute or repudiate the gift, as made, but can not create a new gift of a different character.

"Nor does this conflict with the opinions of this court in Clark, &c., v. Clark (17 B. Mon. 705), and Ford v. Thompson, &c., I. Met. 582)."

The statute mentioned in the opinion is identically the same as section 1407, *supra,* of the Kentucky Statutes.

That case is refered to and approved in the later one of Bowles v. Winchester, *supra,* wherein the court in its opinion said: "In the case of Montjoy v. Maginnis (2

Duv. 186) the father dying intestate had given by parol a tract of land to his two sons. After his death, and leaving no writing to perfect the title, the other children refused to ratify the gift and claimed that the two sons should account for rents. This court held it was the land that was given, and not the rents, and as the heirs refused to execute the gift, they could not by repudiating it create an obligation on the donees to pay rents.''

The doctrine of these cases has not been overruled or modified by this court. We find nothing in the cases of Clark v. Clark, 17 B. M. 706; Glass v. Gaines, 13 Ky. Law Rep. 277, and Hill v. Hill, 122 Ky. 689, qualifying the rule. The intention of the intestate in those cases was not to give the land itself, but by express terms or acquiescence to donate the use and occupation, which is a thing incident to the land itself, and issues out of it. Were the rule otherwise than as stated in the Montjoy case, *supra*, it would require the donee to accept and account for a species of property which he never intended to accept, and would be making an entirely different arrangement from that made or intended by the parties. Illustrating how it would work here, let us for a moment see what would happen if appellant's contention should be adopted. If the land itself were the advancement the amount for which the daughter would be charged would be its value at the date of the advancement, which in this case appears to be about $5,400.00, the price paid for it. We know as a matter of current history that such land, if indeed not all land, has greatly advanced since 1891, until perhaps this particular tract may have increased as much as threefold. To this add the value of the use and occupation from that time, which is more than $10,-000.00, then the appellant, under his contention, would share in a total sum of about $25,000.00 instead of the value of the land at the time it was attempted to be given to the daughter. Aside from the reasons hereinbefore advanced, such result should not be allowed to be accomplished through the medium of a court of equity by a recalcitrant heir who refuses and declines to carry out the arrangement made by his ancestor whereby he would reap a great reward for himself, and at the same time perpetrate a fraud upon his co-heirs who are entitled to an equal share of the property with himself. Such a doctrine is not called for by any principle governing the law of advancements, and its adoption would produce con-

ditions neither intended by the donor nor contemplated by the donee.

We have not overlooked the objection urged to the competency of the daughter as a witness under section 606 of the Civil Code to testify as to the transaction with her father, but in considering the case we have eliminated her testimony and found sufficient remaining to justify the judgment of the chancellor.

We therefore fail to find any error in the judgment, and it is accordingly affirmed.