## Ecton et al. v. Flynn et al.

(Decided May 14, 1929.)

B. R. JOUETT, JOUETT & METCALF and ALLEN, BOTTS & DUNCAN for appellants.

BENTON & DAVIS for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming in part and reversing in part.

Frank Flynn of Clark county was married twice. Appellants are two children of his first marriage; and ap-

pellees are three children of his last marriage. His second wife died in 1916. At the time he was 63 years old. He owned a farm of 110 acres lying at the intersection of the Boonesboro pike and Flanagan pike. The mansion house and improvements were on the eastern part of the farm fronting on Flanagan pike. The western part of the farm fronting on the Boonesboro pike had as improvements a small cottage and an old barn. After the death of his wife Frank Flynn lived in the cottage until he died in 1924, except for a few months in 1921, when he resided with one of the appellees.

About a year prior to his death, Frank Flynn executed and delivered to the appellees a deed conveying to them 50 acres of the 110-acre farm. The consideration for the conveyance is recited in the deed in this language: "Party of the first part, for and in consideration of the love and affection that he bears to the second parties who are his sons, has this day given and hereby conveys to the parties of the second part and their heirs the following described real estate."

Following the habendum clause there is this provision in the deed: "It is expressly understood and agreed by the parties hereto that the conveyance of this land to the second parties by the first party is not in the nature of an advancement from the first parties to the second parties, but is an absolute gift to them."

Upon the death of Frank Flynn, his son, Roy Flynn, one of the appellees, was appointed administrator of his estate. He reduced the personal property to cash, and paid the indebtedness of his father's estate, and made distribution of the balance of the money among the five children of his father. His final settlement was made by the county court of Clark county in January, 1925. Prior to this settlement, none of the appellees made any claim for services against the estate of their father.

In addition to the personal property which was distributed, Frank Flynn was the owner of 60 acres of the 110-acre farm, and four town lots in the city of Winchester. He died intestate. By agreement of the children the real estate was sold for a sum aggregating a little less than $9,000. The controversies involved in this litigation arose, and by further agreement the proceeds of the sale of the real estate were placed with a bank in Winchester to hold as trustee until the questions involved in this litigation could be finally determined.

The deed conveying the 50-acre tract of land to the appellees was executed May 11, 1923, and the appellants contend that it was an advancement, and that they should first be made equal with appellees out of the fund and held by the bank before there should be any distribution of the money realized from the sale of the 60 acres and the town lots. The appellees contend that the conveyance to them was not an advancement, but that the property was conveyed to them for a valuable consideration, and not in consideration of love and affection or as an absolute gift. They contend that the valuable consideration consisted of services rendered to Frank Flynn, their father, after the death of their mother in 1916 and up to the execution of the deed in 1923.

Appellants instituted their suit to have it adjudged that the land conveyed to appellees was an advancement.

In their answer appellees made an issue on the material allegations of the petition, and set up certain affirmative pleas as a defense. One of these was that Frank Flynn derived property from his second wife which passed into his estate. But this plea appears to have been abandoned, and we find no proof in the record to sustain it in whole or in part.

Another affirmative plea which was but an amplification of their denial that the consideration for the conveyance was love and affection was that the conveyance was made in consideration of, and in settlement for, services rendered.

Another plea in the answer was that they rendered services to their father after the date of the conveyance of the land to them, and up until his death in September, 1924.

Still another plea in their answer was that their father used the land and received the rents therefrom after the date of the conveyance to them and up until his death, and that they were entitled to the reasonable rental value of the land during that period.

The appellees moved for an issue out of chancery on the following questions: (1) What advancements had been made by Frank Flynn in the way of cash to the appellees within the last four years before his death? (2) Was the conveyance of May 11, 1923, made as a settlement for services and board furnished to Frank Flynn by appellee? (3) what was the value of the 50 acres on May 11, 1923? (4) What was the reasonable value of the services rendered by appellees to Frank Flynn for

two years next prior to May 11, 1923, and for five years next preceding May 11, 1921? (5) What was the reasonable value of the services rendered to Frank Flynn by appellees from May 11, 1923, until his death? (6) What was the reasonable value of the use of the 50 acres by Frank Flynn and his estate after the date of the conveyance until the personal property had been removed from the land in January, 1925?

The first question was withdrawn from the jury during the trial. In answer to the second question, the jury found that the conveyance of 50 acres was made to appellees as a settlement for services and board furnished by them to their father. In answer to the third question, the jury fixed the value of the 50 acres of land at $150 an acre, or $7,500. In answer to the fourth question, the jury found that the reasonable value of the services rendered by appellees to their father for two years prior to May 11, 1923, was $500 a year, and for five years next preceding May 11, 1921, was $300 per year. In answer to the fifth question, the jury found that the reasonable value of the services rendered to Frank Flynn by appellees from the date of the conveyance of the 50 acres to the date of his death was $400. In answer to the sixth question, the jury found that the reasonable value of the use of the 50 acres of land by Frank Flynn and his estate after the date of the conveyance, and until the personal property was removed from the land in 1925, was $100.

After the findings of the jury, appellants moved the court to enter a judgment holding that the conveyance of May 11, 1923, was an advancement, and that the value of the land as of that date was $12,500, or to grant them a new trial. The court overruled the motion, and entered a judgment on the evidence. The judgment of the chancellor was that the value of the 50 acres on the date of the conveyance was the amount found by the jury, and that it should be treated as an advancement to the extent of $4,500, and as a settlement for services to the extent of $3,000. The findings of the jury were only advisory, and the chancellor saw fit to make some modifications of its findings when he entered his judgment.

It is suggested, in the brief for appellants, that appellees made no claim against the estate of their father before the administrator made his settlement, and that they are estopped to raise the question now. There was no reason for them to make a claim against the estate for

services rendered prior to May 11, 1923, as they were claiming in their answer that the conveyance was made in consideration of the services rendered by them prior to that date. As they viewed the matter, the whole transaction relating to the conveyance of the 50 acres was a closed book. It was unnecessary for them to make a claim against the estate in order to enable them to rely on the defense that the conveyance was not an advancement, and that the true consideration was services rendered by them prior to the date of the conveyance.

It is also suggested that the claim for services rendered to their father after the date of the conveyance had no proper place in this litigation, and that, if appellees had any claim by reason of such services, it was a claim against the estate, and should have been so presented. In this contention appellants are correct. If they were entitled to anything for these services, it was a claim against the estate, and should have been properly presented. There is another reason why it could not be considered here, and that is that appellees did not rely on a counterclaim. The chancellor properly disallowed this claim in the judgment, although the jury found the value of these services to be $400.

It is also contended by appellants that the claim for rent on the 50 acres of land after the date of the conveyance, and until the personal property had been removed from the land, was a charge that should have been made against the estate. It was properly a claim against the estate, but, as there was no counterclaim, nothing could be allowed to appellees as the reasonable rental value of the land for that period. The jury found the reasonable rental value for the period to be $100, but the court did not make any allowance to appellees on account of this item.

Under the provisions of section 1407, Ky. Stats., the conveyance of the 50 acres of land to appellees must be treated as an advancement, if the consideration was as expressed in the deed. The intention of the grantor in such cases, or the donor, does not govern. As has been held by this court, the purpose of the statute is to effect equality in distribution. If a parent gives a child or certain of his children, a part only of his estate, and dies intestate as to the remainder, the law will take hold of the undisposed part and apply a sufficient amount of it to equalize the others with the favored ones, or to equalize them as far as may be done with the undisposed

part of the estate. Hook v. Hook, 52 Ky. (13 B. Mon.) 526; Clarke v. Clarke, 56 Ky. (17 B. Mon.) 698; McCray v. Corn, 168 Ky. 457, 182 S. W. 640; Isgrigg v. Isgrigg, 179 Ky. 260, 200 S. W. 478; Thompson v. Latimer, 209 Ky. 491, 273 S. W. 65.

There is no doubt that it was the intention of Frank Flynn to favor appellees when he conveyed this property to them. He gave expression to that intention in the deed in language unmistakable. He did not desire this land charged to these children as an advancement, but he could not by a mere declaration make that an advancement which is not such by law, or prevent that from being an advancement which is made so by law. The court must treat the 50 acres as an advancement, unless the consideration for the conveyance was other than as expressed in the deed.

It is contended by appellants that appellees should not have been allowed to introduce parol evidence to modify the terms of the conveyance of May 11, 1923, by showing that the consideration was for services rendered and not love and affection. They argue that parol evidence should not have been admitted which tended to show that the consideration for the conveyance was a valuable consideration instead of a good consideration. They admit that the consideration expressed in the deed may be impeached by oral testimony. Such is the provision of the statute found in section 472, and so it has been held by this court in many cases. The rule was restated and amplified in the case of Gordon's Heirs v. Gordon, 58 Ky. (1 Metc.) 287, and it has been consistently followed since the rendition of that opinion. An examination of any citator will show that the case has been consistently followed. In the well-considered case of McCray v. Corn, 168 Ky. 457, 182 S. W. 640, which was a case similar to the one under consideration, the statutory provision was again so construed.

But counsel for appellants say that it is not merely an impeachment of the consideration to allow oral testimony in this case touching the provisions of the deed. They say that the expression in the deed, "but is an absolute gift," is a part of the body of the deed, and does not relate to the consideration. It is true the expression appears in a different part of the deed, but clearly it relates to the consideration, and parol evidence was properly admitted on that point. The cases cited and relied on by appellants do not announce a different rule in our

opinion, although there are some expressions in some of the cases which might be construed to the contrary. But a careful examination of the opinions will disclose that the evidence rejected was not wholly intended to impeach the consideration in the deed.

Appellants urge upon the court the contention that the evidence relating to the services performed by appellees for their father was not sufficient to establish a valid obligation on the part of the father, or his estate, to pay. The cases relied on are those where it has been held that, where there is no express promise to compensate, and it is not contended here that there was any such promise, the facts upon which the law will raise a promise must be set forth with particularity, and must show such unusual conditions as will answer the purpose of an express promise. The cases so holding are numerous. Jeffries' Ex'r v. Ferree, 175 Ky. 18, 193 S. W. 646, is one of the leading cases, and it brings together the authorities into that one opinion. But counsel for appellants misconceive the true situation. If the appellees rendered the services, and they and their father thereafter agreed that the services should be compensated, and the contract was actually executed, the case is taken out of the general rule that applies to cases where particular facts must be shown clearly to raise the presumption of an implied contract.

We now come to the most serious question in the case, and that is whether the evidence produced by appellees was sufficient to establish that the conveyance was made in consideration of services rendered. The deed was the expression of the intention of the parent, and an expression of his intention in the most solemn manner. He was careful to use language which could not be misunderstood. He not only stated that the consideration was love and affection, but he went further, and in closing the instrument he stated in effect, that he wanted it understood that it was an absolute gift, and that it should not be treated as an advancement. If it had been for services rendered to him by appellees, it is natural that he would have stated in the deed that he was conveying the property to them in satisfaction of services which they had performed for him for which it was his desire to pay. We thus have a case where the parent, solely speaking, stated that it was a gift and not a conveyance for a valuable consideration. Under our statute and the opinions of this court, the solemn expression of the par-

ent as to the nature of the consideration may be overcome by parol testimony. If the consideration had been expressed in the deed as services rendered, the burden would have been on appellants to show that the consideration was otherwise than as expressed in 'the deed. But, as the consideration is expressed in the deed as a good consideration, and not a valuable consideration, the burden was on the appellees to show that the consideration was not that expressed in the deed.

In such cases it is not sufficient to show that services had been rendered which might have answered as a consideration for the conveyance, but it must be shown that it was the intention of the parties, at the time of the execution of the conveyance, that the services should be thus satisfied. If it is only shown that the children had rendered such services to the parent in giving to him attention showing their affection, and which gave rise to a desire on his part to make a gift because of the gifts of service which he had received, the evidence is not sufficient. The evidence must be so clear and convincing that the mind is not left in doubt as to the intention of the parties at the time. It must be established that the consideration stated in the deed was not correct because of some oversight, fraud, or mutual mistake at the time of the execution of the deed. It is not necessary to plead that the consideration was wrongly expressed because of oversight, fraud, or mutual mistake, but the statute goes no further than to allow proof without such a plea.

There is an abundance of evidence showing that Frank Flynn told different persons before he executed the deed that the appellees had been very kind to him, and that he was going to convey the property to them because of the services which they had rendered. This may not mean that he did not intend to give the property to them because they had given the services to him. It is also shown by a number of witnesses that he stated to them that he had conveyed the property to them in consideration of the services which they had rendered to him. This is hardly a contradiction of the statements in the deed. He may have recognized the services freely given, and intended to give the property because of the mutual love and affection existing between the sons on one side and him on the other.

If the testimony of these witnesses as to what he said should be treated as a contradiction of the provisions

of the deed as to the consideration, we are confronted with the facts stated in the deed itself, which was a more solemn expression on his part that the conveyance was an absolute gift. We do not agree that this evidence was sufficient to show that the consideration in the deed was not as expressed therein.

It is shown that appellees for a number of years obtained, prepared, and carried to him his food from day to day. This is the chief reliance of appellees to show the services rendered. It is most probable that, if it should be suggested that appellees would not have performed this kindness and service to their father unless they knew he was going to pay for it, they would be much offended. Doubtless there was no thought in their minds of making any charge, and there was no thought in the mind of the parent that he was expected to pay. He thought, however, that he should return the kindness, and he did so by giving to them the land.

If it should have been shown by the evidence in this case that the appellees regarded their services as having a money value, and that the father, recognizing that fact, attempted to pay them by a conveyance of the land, the case for appellees would be made out. We do not mean to hold that in a proper state of case the parties might not agree upon the value of the services and make a settlement, as it is claimed by appellees was done in this case. The evidence before us does not establish clearly and convincingly that there was an agreement at the time of the conveyance that the property should be conveyed in satisfaction of the services rendered.

In the case of McCray v. Corn, supra, this court had before it a similar state of facts. In passing on the question, the court said: "It may be true that the services of these boys during the ten years between the death of their father and the conveyance of this land to them were worth the recited consideration in the deed. But under the circumstances of this case this is not the way the transaction should be looked at. During these years they were working for themselves as well as their mother. They derived and had reasonable expectation of deriving much larger benefits from their labor and services than their mother did, and it might be said that the increase in the estate and the ability to buy this 207 acres of land was the result of the combined efforts of the capital of the mother and the labo of the boys. We are, therefore, of the opinion that they should be charged with

the value of this land as an advancement at the time the conveyance was made.''

In the case quoted from, the mother, who had conveyed the land to her sons, had stated, at the time and before the deed was made, that she intended to convey the land to her sons in consideration of the labor and services they had rendered to her. The court held that the evidence was competent, but, notwithstanding that evidence, the court did not find testimony sufficient to authorize a holding that the consideration was for services rendered. The deed in that case, however, showed a valuable consideration, and the burden was on those seeking to have it declared an advancement to show otherwise.

The evidence as to the value of the land was conflicting. The chancellor accepted the finding of the jury on this point, and we agree that he was correct in fixing the value of the 50 acres at $7,500.

The judgment of the chancellor in all respects is affirmed, except the allowance of $3,000 for services mentioned in the judgment. The entire $7,500 should be charged as an advancement instead of $4,500, as found by the chancellor.

Judgment affirmed in part and reversed in part, and cause remanded, for proceedings consistent with this opinion. Appellants will pay one half the cost in this court, and appellees will pay the other half.